OPINION *Page 2 
{¶ 1} Plaintiff-appellant Elizabeth Rohr nka Chaplin appeals the decision of the Mahoning County Juvenile Court finding her in contempt of a prior order regarding the federal income tax dependency exemption. The issues on appeal are whether the court properly interpreted its prior order, whether the order's language was clear or ambiguous, and whether appellant's action constituted contempt. For the following reasons, we reverse the trial court's suggestion that the prior order was unambiguous but affirm the trial court's interpretation of the order regarding all appealed tax years as a reasonable construction of the language at issue. We also reverse the contempt finding against appellant based upon our finding of ambiguity in the order violated.
 STATEMENT OF THE CASE {¶ 2} On December 8, 1992, appellant filed a complaint against obligor-appellee Blair Williams to establish paternity of her son who was born June 19, 1992. In mid-1993, paternity was established. On September 19, 1993, the referee recommended child support at $555.08 per month retroactive to the child's date of birth. Thus, obligor-appellee began his child support obligation with an arrearage in the amount of $7,216.04. He was ordered to pay $19.92 per month toward this arrearage. The referee's report also stated:
 {¶ 3} "That Obligor be granted the right to claim the child as a Dependent for tax purposes commencing with tax year 1994 so long as he remains current in his child support obligation in any given tax year. Obligee be ordered to execute the necessary forms, including IRS Form 8332, to facilitate the taking of the exemption by the Obligor."
 {¶ 4} On October 7, 1993, the juvenile court adopted the referee's report and recommendations. In 2000, the Mahoning County Child Support Enforcement Agency (CSEA) applied a $4,446 tax refund intercept to obligor-appellee's arrearage leaving $1,436.80. In March 2001, the court ordered obligor-appellee's employer to transmit any expected lump sum payment over $150 up to the amount of the arrearage, which was said to be $1,331.92.
 {¶ 5} In June 2001, obligor-appellee's child support obligation was increased to $646.43 per month. In April 2002, the court ordered obligor-appellee's employer to *Page 3 
transmit any expected lump sum payment over $150 up to the amount of the arrearage, which was said to be $1,610.26 as of February 2002.
 {¶ 6} On June 24, 2005, obligor-appellee filed a motion asking the court to require appellant to appear and show cause why she should not be held in contempt for failing to comply with the court's October 7, 1993 judgment regarding the dependency exemption. Obligor-appellee advised that appellant has failed to fulfill her obligation to execute the necessary federal income tax forms since the tax year 2001.
 {¶ 7} Obligor-appellee attached a letter from the IRS advising that conditional court orders are not acceptable proof of the right to claim a dependency exemption and that he must thus receive a signed Form 8332 from appellant in order to claim his son. The IRS also advised obligor-appellee that if appellant would not sign the form, he should return to court and have the conditional phrasing removed from the entry. Thus, obligor-appellee asked the court to order appellant to complete the necessary forms and (in order to avoid future disputes) to delete from the conditional language: "so long as he remains current in his child support obligation in any given tax year."
 {¶ 8} Appellant responded that she was not required to sign the past tax deductions over to appellee because he was not current in his child support obligation for the years in question. She cited the CSEA's arrearage tracking system, which informed her that an arrearage existed at the end of each relevant tax year.
 {¶ 9} A hearing was held before the magistrate on December 2, 2005. Obligor-appellee informed the court that he is paid on the fifteenth and the last day of the month. (Tr. 10). A CSEA representative testified that he recently completed an audit concerning obligor-appellee's payments. He explained that the computer adds the new month's child support obligation on the first of the month. Thus, an obligor starts each month with an arrearage even though he is permitted to divide his payments according to how many paychecks per month are issued. (Tr. 10-11). He pointed out that a child support payment taken out of an obligor's paycheck issued on the last day of the month will not arrive at CSEA for some days later. As such, as far as the computer records are concerned, the obligor will always be behind at the end of the month and thus at the end of the tax year. (Tr. 11).
 {¶ 10} The CSEA representative stated that obligor-appellee has been current with his monthly support obligation over the years. (Tr. 14, 16). He explained that *Page 4 
although obligor-appellee had an arrearage at the end of 2001 in the amount of $1,700, obligor-appellee began his child support obligation with an arrearage due to the nature and timing of those proceedings. (Tr. 12-13, 15-16). He also noted that after the main arrearage from the past was paid off at the beginning of 2002, the payments have all remained timely as far as the withdrawals from his paychecks. (Tr. 14). Thereafter, appellee's year end arrearage was primarily a "bookkeeping arrearage." (Tr. 17-18).
 {¶ 11} The magistrate determined that obligor-appellee was not current in 2001 due to a year end arrearage in an amount more than the monthly support obligation amount. (Tr. 12). As for 2002, the magistrate found that the arrearage went down to $1,100 in April, to $624 in August (which is less than the monthly amount), and to $296 by the end of the year. (Tr. 13). In 2003 and 2004, the audit never showed an amount higher than a one-month obligation. (Tr. 13-14). The magistrate concluded that due to the way obligor-appellee is paid, he will always have an arrearage on CSEAs books. (Tr. 20). The magistrate described this as a technicality because at the end of the tax years 2002, 2003 and 2004, the last portion of the payment had been taken from appellee's paycheck but merely had not arrived yet at CSEA from obligor-appellee's employer. (Tr. 21).
 {¶ 12} On March 2, 2006, the magistrate filed a decision finding that obligor-appellee was not current in 2001 but was current in 2002, 2003 and 2004. The magistrate also found appellant in contempt for failing to permit obligor-appellee to take the deduction in the years he was current and sentenced her to three days in jail. The sentence was held in abeyance on the condition that she purge the contempt by complying with the prior order and by signing the forms necessary for obligor-appellee to take the exemption in 2002, 2003 and 2004.
 {¶ 13} Although obligor-appellee's request for the 2001 deduction was denied, only appellant objected to the magistrate's decision.[1]
Appellant alleged that obligor-appellee failed to prove by clear and convincing evidence that she breached any obligation placed upon her in the prior order. She asked the trial court to review the audit analysis summary generated by CSEA, which admittedly shows obligor-appellee *Page 5 
was in arrears for 2002, 2003 and 2004. A transcript of the magistrate's hearing was ordered for the court's review.
 {¶ 14} On September 28, 2006, the juvenile court heard the matter. Appellant argued that any arrearage showing on the books at the end of the year means that obligor-appellee was not current for purposes of the court's 1993 order. She contended that the 1993 judgment entry did not contemplate substantial compliance but rather required evaluating whether there existed a recorded arrearage at the end of the year. She also urged that she was not in contempt because she relied on the arrearage shown on the books.
 {¶ 15} Obligor-appellee countered that his payments were current at the end of each tax year at issue and that he was never advised of a delinquency. CSEA's attorney essentially asked the court to determine whether "current" for purposes of the tax deduction entry is synonymous with "no arrearage on the books." (Tr. 9). This attorney advised that no one in the system is ever completely without an arrearage when they are paid twice a month and that very few cases are at zero balance at the end of the month due to this computer program. (Tr. 9-10). It was declared that CSEA would not have determined that obligor-appellee was in default because the state law requires an obligor to be more than one month in arrears before there exists a deficiency. (Tr. 10).
 {¶ 16} On October 2, 2006, the juvenile court adopted the magistrate's decision and purported to incorporate such decision by reference. Appellant filed timely notice of appeal. This court ordered appellant to obtain a proper final appealable order as the juvenile court may not merely adopt the magistrate's decision without defining the parties' rights and obligations. On December 20, 2006, the juvenile court complied and entered a conforming judgment reiterating the magistrate's recommendations.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 17} Appellant's first assignment of error contends:
 {¶ 18} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY ORDERING THAT THE APPELLEE WAS ENTITLED TO THE CHILD SUPPORT DEDUCTION FOR THE YEARS OF 2002, 2003, AND 2004."
 {¶ 19} Appellant claims that the court retroactively modified the 1993 order to deal with the situation where an arrearage exists but is the result of how the pay period *Page 6 
falls. She disputes that the court simply enforced its prior order because the prior order had no exception for situations when the arrearage was from past years or was the result of administrative problems in receiving payments. Appellant urges that the language of the 1993 judgment entry is clear and subject to only one reasonable interpretation: if an arrearage exists, obligor-appellee is not entitled to the dependency exemption.
 {¶ 20} A court can modify a child support order, including the right to the dependency exemption. However, it cannot do so retroactively in the absence of certain circumstances not alleged to exist here. See, e.g., Hakhamaneshi v. Shabana, 7th Dist. No. 00CO36, 2001-Ohio-3292. See, also, Walker v. Walker, 151 Ohio App.3d 332, 2003-Ohio-73 ¶ 19, 21, citing R.C. 3119.83. The trial court here did not purport to modify the judgment entry. Rather, the court endeavored to interpret and apply the entry. As aforementioned, appellant argues that the court's interpretation was improper and thus actually constituted a retroactive modification.
 {¶ 21} If the words and language used in a judgment or decree are free of ambiguity and doubt and appear to express clearly and plainly the sense intended, there is no need to resort to other means of interpretation. In the Matter of Blake (Dec. 11, 1986), 7th Dist. No. 85-J-36. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of syllabus. If the terms of the court order are deemed unambiguous, then we apply normal rules of construction and review the matter de novo. Oliver-Pavkovich v. Pavkovich, 7th Dist. No. 02CO222, 2003-Ohio-6718, ¶ 16.
 {¶ 22} An ambiguous order is one that is unclear or indefinite and is subject to more than one rational interpretation. Contos v. MonroeCounty, 7th Dist. No. 04MO3, 2004-Ohio-6380, ¶ 15. If the language is ambiguous, then the trial court has broad discretion when clarifying that ambiguous language. Oliver-Pavkovich, 7th Dist. No. 02CO222 at ¶ 16.
 {¶ 23} At issue is the interpretation of the following portion of the court's order: "That Obligor be granted the right to claim the child as a Dependent for tax purposes commencing with tax year 1994 so long as he remains current in his child support *Page 7 
obligation in any given tax year. Obligee be ordered to execute the necessary forms, including IRS Form 8332, to facilitate the taking of the exemption by the Obligor."
 {¶ 24} The word "current" is the parties' major contention point. Appellant equates it with having no arrearage according to CSEA computer records both at the end of and during the year. As obligor-appellee pointed out below, the word "arrearage" is not used in the court order. As CSEA explained, they distinguish between a technical computer bookkeeping arrearage and a default or deficiency. Default is statutorily defined as "any failure to pay under a support order that is an amount greater than or equal to the amount of support payable under the support order for one month." R.C. 3121.01(B). See, also, R.C.3119.82 (when reviewing child support, court is to determine if support is substantially current before allocating exemption to obligor).
 {¶ 25} Here, obligor-appellee did not owe more than one month's support at the end of the tax years 2002, 2003 and 2004. Since the law provides for payments to be made by employer withholding, as long as a payment is withdrawn from an obligor's paycheck as required, that obligor is current. Delays by the employer in sending or child support in processing are not attributed to the obligor for purposes of whether or not he is current. Thus, obligor-appellee would factually be considered current at the end of each tax year.
 {¶ 26} This leads to a discussion of the issue regarding 2002, where the arrearage was not just a year end bookkeeping arrearage. That is, the court found that in 2003 and 2004, not only did obligor-appellee owe less that one month of support at the end of the year, but he also never owed more than one month throughout the year, (with such amount due being attributable to the withholding system). (Tr. 13-14). However, such was not the situation for 2002. Although by year's end, he was current as defined above, a court order shows that obligor-appellee had an arrearage over $1,600 in February 2002 and testimony revealed that he still owed $1,100 in April 2002. (Tr. 13).
 {¶ 27} As such, we must determine whether the 1993 entry requires the obligor to be current at the end of each month or merely at the end of the year and whether it was a rational interpretation for the trial court to use the end of the year mark as the relevant gauge of appellant's child support status as "current." The order's use of the *Page 8 
phrase "remains current in his child support obligation in any given tax year" supports a conclusion that if the obligor is current at the end of the tax year, he is in compliance. Said conclusion is a reasonable interpretation of the entry.
 {¶ 28} However, to "interpret" language, as we were forced to do here, presupposes conflicting ways to read and understand the words scrutinized. Accordingly, we must differ with the trial court that the language at issue here was plain, unambiguous, clear as to what point in time an obligor must remain current or as to how a bookkeeping arrearage is judged. Thus, we reverse any implication that the order was unambiguous but uphold the trial court's interpretation as a reasonable construal of the ambiguities at issue. This holding affects the result of the next assignment of error as well.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 29} Appellant's second assignment of error provides:
 {¶ 30} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, AND ABUSED ITS DISCRETION BY FINDING THE APPELLANT IN CONTEMPT OF COURT."
 {¶ 31} Civil contempt of court is often imposed for the disobedience of a court order. See Windham Bank v. Tomaszczyk (1971),27 Ohio St.2d 55. See, also, R.C. 2705.05 (disobedience of or resistance to a lawful order of a court). The court has both statutory and the inherent ability to punish for such contempt. Zakany v. Zakany (1984), 9 Ohio St.3d 192,194. In civil contempt, punishment is remedial or coercive and is for the benefit of the complainant. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253-254. Prison sentences are conditional as the contemnor carries the keys of his jail cell in his own pocket by performing as the court ordered. Id.
 {¶ 32} Almost all courts, including this one, require clear and convincing evidence in civil contempt cases. See Spickler v.Spickler, 7th Dist. No. 01CO52, 2003-Ohio-3553, ¶ 46. See, also, Dudley, Getting Beyond the Civil/Criminal Distinction: A New Approach to the Regulation of Indirect Contempts (1993), 79 Va.L.Rev. 1025, 1032, fn. 23. However, it is not a defense for the alleged contemnor to claim there was no intent to violate the court's order; rather, state of mind is irrelevant. Pugh v. Pugh (1984), 15 Ohio St.3d 136, 139, citingWindham, 27 Ohio St.2d at 58. See, also, McComb v. Jacksonville PaperCo. (1949), 336 U.S. 187, 191 (absence of willfulness is no defense to civil contempt). This is because the purpose *Page 9 
of civil contempt is to ensure the court's dignity and the uninterrupted and unobstructed administration of justice. Pugh, 15 Ohio St.3d at 140, citing Windham, 27 Ohio St.2d at paragraph two of syllabus.
 {¶ 33} We review a trial court's finding of contempt for an abuse of discretion. State ex. rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,11. An abuse of discretion means that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 34} First, appellant points to her arguments from assignment of error number one and urges that she did not disobey a prior court order. In the alternative, appellant argues that she had no notice of the meaning of the court's prior order regarding the dependency exemption and thus should not be held in contempt. She states that if the language is vague and subject to interpretation, then contempt is improper.
 {¶ 35} Obligor-appellee reiterates his arguments from above. He also responds that the prior order clearly commanded appellant to execute the forms necessary for appellee to take the exemption. He concludes that the court did not act unreasonably, arbitrarily or unconscionably in sanctioning appellant with contempt.
 {¶ 36} This court has declared that "[a] party cannot be found in contempt if the contempt charge is premised on a party's failure to obey an order of the court and the order is not clear, definite, and unambiguous and is subject to dual interpretations." Contos, 7th Dist. No. 04MO3 at ¶ 15, citing Chilcote v. Gleason Const. Co. (Feb. 6, 2002), 5th Dist. No. 01COA01397; Collette v. Collette (Aug. 21, 2001), 9th Dist. No. 20423; Marysville v. Wilson (July 20, 1994), 3d Dist. No. 14-94-8; Smith v. Smith (Jan. 13, 1994), 10th Dist. No. 93AP-958; In reContempt of Gilbert (Dec. 16, 1993), 8th Dist. Nos. 64299, 64300. We also held:
 {¶ 37} "A trial court cannot impose contempt sanctions on a party if the party cannot know whether or not its actions violate the trial court's order. Merely because the trial court knew what its order meant does not mean the parties knew what the order meant." Id. at ¶ 24.
 {¶ 38} Thus, although general arguments that the alleged contemnor lacked intent or misunderstood the court order are invalid defenses,where the trial court's order is subject to more than one reasonableinterpretation, contempt is not the proper remedy. CSEA reported an arrearage for 2002, 2003 and 2004, and appellant relied *Page 10 
on this report in determining whether obligor-appellee was current. Her interpretation was not violative of any plain language of the 1993 entry.
 {¶ 39} As stated in the prior assignment, the dispositive language was ambiguous. Consequently, the contempt finding is reversed. We note that this ruling does not relieve appellant from complying with the trial court's order to sign the proper forms for past years. If she disobeys that order, she can indisputably be held in contempt. Moreover, she can no longer rely on the specific ambiguities resolved herein to avoid contempt in the future.
 {¶ 40} In conclusion, the trial court's judgment interpreting the 1993 entry is reversed in part and affirmed in part. Specifically, we disagree with any suggestion that the language at issue is unambiguous; however, we adopt the trial court's holding as a reasonable interpretation of an ambiguous entry. The trial court's judgment of contempt is thus reversed as it is not proper to hold a party in contempt of an ambiguous order.
Donofrio, J., concurs. Waite, J., concurs.
[1] Obligor-appellee did not appeal the trial court's interpretation regarding the 2001 arrearage even though it was the result of his initial arrearage and was not due to his failure to remain current in the payments for that tax year. *Page 1