[Cite as *Colombo v. Chesser*, 2018-Ohio-1477.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| David F. Colombo, | : | |
| Plaintiff-Appellant, | : | No. 17AP-278 |
| | | (C.P.C. No. 10DR-4146) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Kathleen Denise Chesser f.k.a. Colombo, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 17, 2018

**On brief:** *Office of Anthony Greco LPA*, *Anthony W. Greco*, and *Aaron E. Kenter*, for appellant. **Argued:** *Anthony W. Greco.*

**On brief:** *Bradley N. Frick & Associates, Bradley N. Frick,* and *Christine E. Strehl,* for appellee. **Argued:** *Christine E. Strehl.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, David F. Colombo, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, granting the Motion to Enforce the Terms of the Divorce Decree ("motion to enforce") filed by defendant-appellee, Kathleen Denise Chesser f.k.a. Colombo ("Chesser"), and adopting Chesser's proposed Qualified Domestic Relations Order ("QDRO"). For the reasons that follow, we reverse and remand.

## I. Facts and Procedural History

{¶ 2}   Colombo and Chesser were married on June 23, 1995, and divorced on June 4, 2012, by way of an agreed judgment entry—decree of divorce ("decree").  During their marriage, Colombo worked as a physician at The Ohio State University and, as a participant in "The Ohio State Alternative Retirement Plan" (a qualified retirement plan under the Employee Retirement Income Security Act of 1974 ("ERISA")), accumulated funds in multiple retirement accounts in connection with that employment.  The decree contains the following provision regarding those accounts:

> 8.  **RETIREMENT ACCOUNTS** — All retirement assets of the parties shall be equalized as of May 1, 2012. The parties shall use Michelle Merkle to determine and carry out the most seemless and cost-efficient manner of equalizing the parties' retirement holdings.  To the extent that equalizing retirement holdings requires the use of a QDRO, DOPO or other similar document, same shall be prepared by American Benefit Evaluators at the direction of Michelle Merkle.  The parties shall equally divide the costs associated with the preparation of any such documents.  The parties have already divided the funds from the $195,000 +/- account, which for all purposes herein shall be excluded from further equalization/division.
>
> Following division of the retirement holdings, each party shall retain their retirement assets and accounts, free and clear of any claim by the other.

(Emphasis sic.)  (June 4, 2012 Agreed Jgmt. Entry – Decree of Divorce at 5-6.)

{¶ 3}    On September 9, 2015, Chesser filed her motion to enforce that is the subject of this appeal.  In her motion, Chesser asserted that the retirement assets had not been "equalized" due to Colombo's refusal to comply with the terms of the decree, and she claimed entitlement to "any gains and/or losses" on her share of the retirement assets accruing after May 1, 2012.  (Sept. 9, 2015 Mot. To Enforce at 3.)  Chesser also requested attorney fees in conjunction with her motion to enforce.  In response, Colombo disputed, among other things, Chesser's claimed entitlement to the gains or losses on the retirement assets accruing after May 1, 2012.

{¶ 4}   On January 15, 2016, the trial court filed an agreed entry stating in part that Chesser is entitled to "at least $443,226.24 as her one half share of" Colombo's retirement

assets. (Jan. 15, 2016 Jgmt. Entry at 1.) The agreed entry further states that "as of May 1, 2012 and pursuant to the Decree of Divorce each party would be entitled to $443,226.24," and it required Colombo to preserve that amount and "add an additional $220,000.00 on a temporary basis" in view of the dispute over Chesser's entitlement to the gains on the retirement assets accruing after May 1, 2012. (Jan. 15, 2016 Jgmt. Entry at 1-2.)

{¶ 5} In January 2017, the trial court held a hearing on Chesser's motion to enforce. In April 2017, the trial court issued its decision on the matter. The trial court concluded that the decree provides that Chesser is entitled to the gains or losses on her portion of Colombo's retirement assets from May 1, 2012 until the date of distribution. Therefore, the trial court granted Chesser's motion to enforce, and it filed a QDRO to effectuate its conclusion. Additionally, pursuant to R.C. 3105.73(B), the trial court awarded Chesser $25,000 in attorney fees.

{¶ 6} Colombo timely appeals.

## II. Assignments of Error

{¶ 7} Colombo assigns the following errors for our review:

> [1.] The trial court erred to the material prejudice of Plaintiff-Appellant in misinterpreting the retirement division language of the parties' Decree of Divorce to entitle Defendant-Appellee to the gains and losses that accrued from May 1, 2012 to the date of distribution.

> [2.] The trial court erred to the material prejudice of Plaintiff-Appellant in entering a QDRO that is inconsistent with the Decree of Divorce.

> [3.] The trial court erred and abused its discretion to the material prejudice of Plaintiff-Appellant in granting $25,000 in attorney's fees to Defendant-Appellee.

## III. Discussion

### A. First and Second Assignments of Error – Division of Retirement Assets

{¶ 8} Because Colombo's first and second assignments of error are interrelated, we address them together. In his first assignment of error, Colombo asserts the trial court erred in finding that the decree entitles Chesser to the gains or losses on her share of the

retirement assets accruing from May 1, 2012, until the date of distribution. Colombo's second assignment of error challenges the trial court's QDRO on the basis that it implements the trial court's erroneous reading of the decree's retirement asset division provision.

{¶ 9} After a trial court issues a divorce decree, it lacks jurisdiction to modify or amend the marital property division, including the division of retirement assets, unless the parties expressly consent in writing to the modification. R.C. 3105.171(I); *Cameron v. Cameron*, 10th Dist. No. 12AP-349, 2012-Ohio-6258, ¶ 10. But a trial court retains "full power" to enforce the provisions incorporated into a divorce decree. *Id.* To effectuate and enforce a divorce decree's division of a retirement asset, a domestic relations court must enter an order such as a QDRO, a division of property order, or similar device. *Id.* at ¶ 12. As long as such a device is consistent with the decree, it is not a modification of the decree. *Id.*, citing *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, ¶ 19. Thus, when the parties "dispute, in good faith, the meaning of a provision in a decree, or if the provision is ambiguous, the trial court has the power to hear the matter, to resolve the dispute, and to enforce the decree." *Robins v. Robins*, 10th Dist. No. 04AP-1152, 2005-Ohio-4969, ¶ 13. If no ambiguity exists, the trial court simply enforces the decree as written. *Cameron* at ¶ 11.

{¶ 10} When the parties have agreed on the terms of the divorce decree, the normal rules of contract interpretation generally apply to ascertain the meaning of its language. *Robins* at ¶ 14. Because the construction of a written contract is a matter of law, the trial court's determination is given no deference and the issue is reviewed de novo. *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. The purpose of contract construction is to realize and give effect to the parties' intent. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). When " 'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' " *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, ¶ 12, quoting *Shifrin* at 638. Furthermore, "inequity perceived in hindsight does not constitute an ambiguity and is irrelevant when

interpreting the meaning of the terms of a decree." *McGeorge v. McGeorge*, 10th Dist. No. 00AP-1151 (May 22, 2001).

{¶ 11} Here, the parties dispute the meaning of the decree's retirement asset division provision. Chesser argues, and the trial court found, that the retirement asset division provision indicates that she is entitled to the gains or losses accrued from May 1, 2012, through the date of actual distribution. In support of her argument, Chesser primarily relies on *Borton v. Borton*, 6th Dist. No. F-10-003, 2011-Ohio-143, and *Freeman v. Freeman*, 10th Dist. No. 97AP-706 (Dec. 16, 1997). In *Borton*, the divorce decree stated that the retirement account "shall be divided equally between the parties on a 50/50 basis, and the parties stipulated a value of $102,000 as of May 6, 2003." *Id.* at ¶ 17. Based on that language, the Sixth District Court of Appeals held that "any appreciation or depreciation occurring between that valuation date and the payout date must be shared equally between the parties." *Id.* at ¶ 18. In *Freeman*, the divorce decree at issue stated in part that "the stocks currently held by the parties in their joint or individual names shall be divided equally between the parties, using the values as of May 11, 1995." In view of that language, this court held that the equal division of the stocks valued at the time of divorce was not a guarantee against a subsequent decrease in value of the stocks before actual distribution pursuant to a QDRO. *Id.* Colombo argues that *Borton* and *Freeman* are factually distinguishable from this case and that the unambiguous language of the provision at issue does not entitle Chesser to the gains or losses accrued after May 1, 2012. We agree with Colombo.

{¶ 12} When the decree was agreed upon and filed, the future investment success of the retirement assets was unknown. As of December 31, 2016, those assets had accrued substantial gains since May 1, 2012. In view of that appreciation, Chesser contends that it would be inequitable and unfair for Colombo to retain all of those gains. However, the fact that Chesser views the gains on the retirement assets since May 1, 2012 as a windfall to Colombo does not alter the agreed upon language used in the decree. The decree states that the "retirement assets of the parties shall be equalized as of May 1, 2012." (June 4, 2012 Divorce Decree at 5.) This means that the parties intended that the assets be divided equally based on their value as of May 1, 2012. Therefore, Chesser is entitled to one-half of the value of the retirement assets as of May 1, 2012, and there is no dispute that this amount is

$443,226.24. The language of the decree does not indicate that Chesser, a non-participant under the retirement plan, has any right to any gains or losses on the assets accruing after May 1, 2012.

{¶ 13} Unlike the *Freeman* case, the case at bar does not involve the division of stock. This case is about whether Chesser, as an alternate payee, is entitled to gains or losses accruing on retirement funds after the filing of the decree. The *Borton* case is also distinguishable. The pertinent divorce decree language in that case did not provide that the retirement assets must be divided equally as of a certain date. Instead, the divorce decree stated that the retirement account must be divided equally, and it separately stated the value of that retirement account on a specified date. It did not state the account must be equalized as of a specified date as found here. Colombo and Chesser could have agreed to allocate to Chesser gains or losses accruing on the retirement assets after May 1, 2012, but they did not. *See Martin v. Howard*, 4th Dist. No. 07CA27, 2009-Ohio-67 (finding that divorce decree awarding each party "50% of the other parties' retirement accrued as of November 21, 2003," unambiguously entitled the non-participant payee to receive only a sum certain based on the value of the retirement assets as of the specified date); *Thomas v. Thomas*, 10th Dist. No. 00AP-541 (Apr. 26, 2001) ("[T]he divorce decree is not ambiguous because the trial court failed to award the defendant interest on her pension distribution when it could have done so."). Consequently, Colombo assumed the risks and rewards associated with the retirement assets occurring after May 1, 2012. Because the language is unambiguous, there is no basis to apply equitable principles to determine the proper division of the retirement assets. *McGeorge*.

{¶ 14} For these reasons, we sustain Colombo's first and second assignments of error.

### B. Third Assignment of Error – R.C. 3105.73(B) Attorney Fees Award

{¶ 15} Colombo's third assignment of error challenges the trial court's $25,000 attorney fees award in favor of Chesser. Pursuant to R.C. 3105.73(B), "[i]n any post-decree motion or proceeding that arises out of an action for divorce, * * * the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In making this equitable determination, "the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems

appropriate, but it may not consider the parties' assets." An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Settele v. Settele*, 10th Dist. No. 14AP-818, 2015-Ohio-3746, ¶ 51.

{¶ 16} Here, the trial court found it fair and equitable to require Colombo to pay $25,000 towards Chesser's attorney fees pursuant to R.C. 3105.73(B). The trial court considered all relevant factors in making its attorney fees determination. While it found both parties partially at fault for engaging in conduct that increased the fees and costs incurred, it found that the equities weighed in favor of awarding $25,000 to Chesser. As part of its analysis of the issue, the trial court considered Colombo's conduct in causing unnecessary delay regarding the retirement distribution. Based on our ruling on assignments of error one and two, we remand the matter for further consideration of the attorney fees determination by the trial court. In doing so, we make no finding on the issue of delay or any other conduct by the parties, or whether the amount awarded should be adjusted or remain the same.

{¶ 17} Accordingly, we sustain Colombo's third assignment of error.

## IV. Disposition

{¶ 18} Having sustained Colombo's first, second, and third assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch. Therefore, this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed;*
*cause remanded.*

DORRIAN and HORTON, JJ., concur.