[Cite as *Keller v. Keller*, 2018-Ohio-3141.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| MICHAEL C. KELLER | : | Hon. John W. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 18 CAF 01 0008 |
| SUSAN S. KELLER | : | 18 CAF 01 0009 |
|  | : | 18 CAF 01 0010 |
| Defendant-Appellant | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:     Civil appeal from the Delaware County Court of Common Pleas, Domestic Relations Division, Case No. 14 DR A 01 0007

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     August 6, 2018

APPEARANCES:

For Plaintiff-Appellee

EUGENE LEWIS
65 East State Street
Suite 1000
Columbus, OH 43215

For Defendant-Appellant

BARRY WOLINETZ
250 Civic Center Drive
Suite 220
Columbus, OH 43215

*Gwin, P.J.*

{¶1} Appellant/Wife appeals the December 27, 2017 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, and the January 22, 2018 QDRO's for the IBM and Nationwide Pension Plans.

*Facts & Procedural History*

{¶2} Appellant Susan Keller and appellee Michael Keller were married for thirty-two years. The trial court granted appellant and appellee a divorce pursuant to an agreed judgment entry-decree of divorce on July 31, 2015. Pursuant to the decree,

> Retirement Accounts: The parties further agree that the parties shall divide equally all retirement/employment benefits, as described below, whether referred to as an IRA, 401(k) Pension, Retirement Plans, Profit Sharing or otherwise, and whether qualified or not qualified, including but not limited to all benefits through Nationwide and prior employer IBM. The parties shall retain QDRO Consultants Company or another proper expert to prepare any necessary QDRO(s) * * * The Retirement Plan documents will control the division of the Plans. * * *
>
> Consistent with the method contained in Exhibit D attached hereto the non-qualified plans and benefits shall be divided as outlined on an "if, as, and when" basis. For the Non-Qualified portion of the pension, the parties agree that the non-qualified plans are to be divided equally as though they were being divided currently as the martial share. The payout of the non-qualified plans shall be paid to

Defendant/Wife after accounting for and having deducted therefrom all tax consequences dividing the balance of the marital share equally between Plaintiff and Defendant. Plaintiff agrees to name Defendant upon his death so that she will receive the remainder of the 50% of the marital share.

{¶3} Exhibit D, attached to the decree of divorce, identified five retirement accounts: Mike 401(k), Sue IRA, Mike UBS Roth, Sue UBS Roth, and Pension. The asterisk at Pension referenced these notations:

*Pension Amounts will be divided as per Qualified Domestic Relations Order QDRO calculation, to be incorporated into your divorce agreement.

*Qualified Pension amounts will be as per a Qualified Domestic Relations Order (QDRO) calculation, to be incorporated into your divorce agreement. The QDRO language will control both pre and post retirement payouts, so that each party's interests can be agreed to in advance. * * *

For the Non-Qualified portion of the pension, the QDRO does not apply, as QDRO's only apply to Qualified plans. The split can be agreed to in your divorce agreement, using a formula to incorporate any additional accruals due to future Nationwide employment * * *.

{¶4} Appellant and appellee filed an agreed judgment entry on August 29, 2016, stating, "the parties further agree that the parties shall divide equally all retirement/employment benefits * * *."

{¶5}    On August 10, 2017, appellant filed a motion for clarification/declaratory judgment with regard to the division of retirement accounts.

{¶6}    The trial court issued a judgment entry on December 27, 2017.  The trial court found the Nationwide and IBM retirement plans should be divided as of July 31, 2015.  Further, that appellant's 50% portion of the Nationwide and IBM retirement plans, as of July 31, 2015, shall be determined utilizing a frozen coverture fraction.

{¶7}    Appellant appeals the December 27, 2017 judgment entry and the January 22, 2018 QDRO's for the IBM and Nationwide Pension Plans and assigns the following as error:

{¶8}    "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED A DIVISION OF RETIREMENT BENEFITS, UTILIZING THE FROZEN COVERTURE METHOD, UPON THE PARTIES' DATE OF DIVORCE."

I.

{¶9}    The issue in this case is whether the proper date of division for appellee's Nationwide and IBM retirement plans is the date of appellee's retirement in the future or whether the proper date of division for appellee's Nationwide and IBM retirement plans is the date of divorce.

{¶10}    Once a court has made an equitable property division, the trial court does not have jurisdiction to modify its decision.  R.C. 3105.171(I).  The trial court, however, retains broad jurisdiction to clarify and construe its original property division so as to effectuate the judgment.  *Oberst v. Oberst*, 5th Dist. Fairfield No. 09-CA-54, 2010-Ohio-452; *Knapp v. Knapp*, 4th Dist. Lawrence No. 05CA2, 2005-Ohio-7105.

**{¶11}** Because the divorce decree incorporates an agreed judgment entry, the determination of the above involves the application of the general rules of contract interpretation. Where ambiguity is complained of and where the parties dispute the meaning of clauses in the agreement, it is the duty of the court to examine the contract and determine whether the ambiguity exists. *Id.* If an ambiguity does exist, the court has the duty and the power to clarify and interpret such clauses by considering the intent of the parties as well as the fairness of the agreement. *Id.*; *Houchins v. Houchins*, 5th Dist. Stark No. 2006CA00205, 2007-Ohio-1450. However, if the terms of the Decree are unambiguous, then the courts must apply the normal rules of construction. *Id.* The interpretation of the clause is a matter of law and the court must interpret the intent of the parties using only the language employed. *Id.*

**{¶12}** We have previously held that the determination of whether an ambiguity exists is a question of law to which we apply a de novo standard of review. *Barnes v. Barnes,* 5th Dist. Stark No. 2003CA00383, 2005-Ohio-544.

**{¶13}** We find this case analogous to *Oberst v. Oberst*, 5th Dist. Fairfield No. 09-CA-54, 2010-Ohio-452. In *Oberst*, the parties submitted proposed QDRO's. *Id.* The appellant's proposed QDRO allocated to her one-half of the appellee's retirement plan as of the date of appellee's actual retirement in the future, whereas the appellee's proposed QDRO allocated to appellant one-half of his retirement as of the effective date of the divorce. *Id.* The parties in *Oberst* did not specify a date for the division of the pension plan in the divorce decree, but the language in the decree provided, "the pension plan of the defendant's is to be equally divided by a QDRO." *Id.*

**{¶14}** In this case, like *Oberst*, appellant's proposed QDRO allocated to her one-half of the retirement plans as of the date of appellee's actual retirement in the future, whereas appellee's proposed QDRO allocated to appellant one-half of his retirement as of the effective date of the divorce. Further, like in *Oberst*, nowhere in the divorce decree or subsequent agreed judgment entry do the parties specify a date for the division of the retirement interests. However, the decree provides, the "parties shall divide equally all retirement/employment benefits."

**{¶15}** Like the appellant in *Oberst*, the appellant in this case argues the trial court erred by refusing to sign her QDRO which followed the plain language of the decree dividing the retirement plans equally. We disagree with appellant.

**{¶16}** For the purposes of the division of marital property, R.C. 3107.171(A)(2) establishes a statutory presumption that the proper date for the termination of a marriage is the date of the final divorce hearing and sets forth a procedure for determining and identifying an alternate date if the court or the parties agree the date of the final hearing is not equitable. Further, the "duration of the marriage is critical in distinguishing martial, separate, and post-separation assets and liabilities, and in determining appropriate dates for the valuation of those assets and liabilities." *Pierron v. Pierron*, 4th Dist. Scioto No. 07CA3153, 07CA3159, 2008-Ohio-1286.

**{¶17}** The Fourth District stated in *Pierron*, in finding the date of divorce was the appropriate date of distribution, that the mere silence on an issue or a failure to address it did not create an ambiguity; nor was the question of perceived inequity relevant to the issue of whether the decree was ambiguous on its face. *Id.*

{¶18} In this case, the parties do not specify a date of the division of the retirement interests in either the agreed judgment entry-decree of divorce or the subsequent agreed judgment entry. However, as we stated in *Oberst*, the mere absence of such a division date does not create an ambiguity in the property division. *Oberst v. Oberst*, 5th Dist. Fairfield No. 09-CA-54, 2010-Ohio-452. Here, we find no ambiguity in the divorce decree. It states, "the parties further agree that the parties shall divide equally all retirement/employment benefits." In the August 29, 2016 agreed judgment entry, the parties again, "agree that the parties shall divide equally all retirement/employment benefits * * *." While the parties could have agreed to a future date in the divorce decree, they did not. As such, we hold the divorce decree unambiguously states that the IBM and Nationwide pension plans are to be equally divided, effective as of the termination of the marriage, on July 31, 2015. See *Oberst v. Oberst*, 5th Dist. Fairfield No. 09-CA-54, 2010-Ohio-452.

{¶19} Appellant also contends the trial court erred in finding her 50% share of the Nationwide and IBM retirement plans, as of July 31, 2015, shall be determined utilizing a frozen coverture fraction. We disagree.

{¶20} Under the frozen coverture method, the trial court "freezes" the pension benefits at the amount in the account as of the divorce date. *Cameron v. Cameron*, 10th Dist. Franklin No. 12AP-349, 2012-Ohio-6258. In the traditional coverture method, the court determines the amount of money due the non-participant spouse by using the value of the pension at retirement to determine the "monthly accrued benefit" and then multiples this monthly accrued benefit by a traditional coverture fraction. *Id.*

**{¶21}** The frozen coverture method calculates the value of the retirement account had appellee retired on the same day the parties divorced. *Id.* The traditional coverture method utilizes the value of the pension at retirement. *Id.* Where there is an "unambiguous direction to award half the value of the pension as of the date of the divorce," the "benefits should be calculated according to the benefits as they existed at the time of the divorce because to do otherwise constitutes a modification of the divorce decree itself." *Id.*; *Cox v. Cox*, 12th Dist. Warren No. CA98-04-045, 1999 WL 58098.

**{¶22}** Based upon our determination that the divorce decree unambiguously states the pension plans are to be equally divided, effective as of the termination of the marriage on July 31, 2015, use of a frozen coverture fraction for determination of appellant's benefits is the only permissible method pursuant to the decree. Accordingly, the trial court did not err in utilizing the frozen coverture method.

**{¶23}** Based on the foregoing, appellant's assignment of error is overruled.

{¶24}  The December 27, 2017 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, and the January 22, 2018 QDRO's for the IBM and Nationwide Pension Plans are affirmed.

By Gwin, J.,

Wise, John, P.J., and

Baldwin, J., concur