[Cite as *Johnson v. McCarthy*, 2019-Ohio-3489.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Cheryl L. Johnson, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 17AP-655 |
| v. | : | (C.P.C. No. 03DR-1429) |
| Donald McCarthy, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

---

### D E C I S I O N

### Rendered on August 29, 2019

---

**On brief:** *Wolinetz & Horvath, LLC*, and *Dennis E. Horvath*, for appellant. **Argued:** *Dennis E. Horvath*.

**On brief:** *James W. Adair, III*, for appellee. **Argued:** *James W. Adair*.

---

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations.

KLATT, P.J.

{¶ 1} Plaintiff-appellant, Cheryl L. Johnson, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that denied her motion for clarification. For the following reasons, we affirm that judgment.

{¶ 2} In a judgment dated November 16, 2005, the trial court granted Johnson and defendant-appellee, Donald McCarthy, a divorce. In addition to determining custody and support issues, the trial court also divided the parties' marital assets, including McCarthy's IBM pension. At the time of the divorce, McCarthy's IBM pension benefits were vested, but

not mature.  The trial court found that the entirety of the IBM pension constituted marital property.  In dividing the IBM pension, the trial court ordered:

> [Johnson] is awarded an equal division of the [IBM] personal pension plan * * *.  [McCarthy] shall promptly and fully cooperate with the transfer of the one[-]half interests awarded to [Johnson] in each of the above retirement plans to [Johnson's] name via a Qualified Domestic Relations Order, rollover or other appropriate instrument.

 (Nov. 16, 2005 Judgment Entry – Decree of Divorce at 15-16.)

{¶ 3}  Almost 12 years after the parties' divorce, Johnson moved for clarification of the November 16, 2005 divorce decree.  Johnson argued that the decree was ambiguous because it did not specify the date on which the valuation and division of the IBM pension had to occur.  Johnson urged the trial court to interpret the decree as adopting the date of McCarthy's retirement, December 31, 2015, as the date for valuation and division of the IBM pension.

{¶ 4}  In response, McCarthy contended that the trial court provided the date for valuation and division of the marital assets, including the IBM pension, when it determined that "[t]he duration of the marriage for the purposes of the valuation of the assets and property division is from the date of the marriage, June 19, 1982[,] to the first day of trial, September 19, 2005."  (Nov. 16, 2005 Judgment Entry – Decree of Divorce at 4.)  McCarthy asserted that, based on this provision, the trial court unambiguously selected September 19, 2005 as the date for the valuation and division of the IBM pension benefits.  Thus, McCarthy argued, using the date of his retirement as the relevant date would constitute a modification, not a clarification, of the divorce decree.

{¶ 5}  In a judgment issued August 18, 2017, the trial court found the divorce decree unambiguously designated September 19, 2005 as the marital asset valuation and division date.  The trial court, therefore, denied Johnson's motion for clarification.

{¶ 6}  Johnson now appeals the August 18, 2017 judgment, and she assigns the following errors:

> I. THE JUDGMENT ENTRY – DECREE OF DIVORCE DATED NOVEMBER 16, 2005, IS AMBIGUOUS WITH RESPECT TO THE ORDERS FOR THE DIVISION OF RETIREMENT BENEFITS.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT MODIFIED THE JUDGMENT ENTRY – DECREE OF DIVORCE TO PROVIDE FOR DIVISION OF THE IBM PERSONAL PENSION PLAN AS OF SEPTEMBER 19, 2005.

III. ASSUMING ARGUENDO THAT THE TRIAL COURT PROPERLY CALLED FOR A DIVISION OF APPELLEE'S IBM PERSONAL PENSION PLAN AS OF SEPTEMBER 19, 2005, THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO IMPLEMENT A TRADITIONAL COVERTURE FORMULA.

{¶ 7} By her first assignment of error, Johnson argues that the trial court erred in concluding the decree unambiguously specified September 19, 2005 as the date for the valuation and division of McCarthy's IBM pension benefits. We disagree.

{¶ 8} After a trial court issues a divorce decree, it lacks jurisdiction to modify the marital property division unless the parties consent or agree to the modification in writing. R.C. 3105.171(I); *accord Colombo v. Chesser*, 10th Dist. No. 17AP-278, 2018-Ohio-1477, ¶ 9. However, where a party asserts that an ambiguity exists in the decree regarding the division of marital property, the trial court has the power to resolve the dispute over the decree's meaning and enforce the decree. *Colombo* at ¶ 9; *Ford v. Ford*, 10th Dist. No. 14AP-954, 2015-Ohio-3571, ¶ 11; *Cameron v. Cameron*, 10th Dist. No. 12AP-349, 2012-Ohio-6258, ¶ 11. A decree contains an ambiguity if it " 'is unclear or indefinite and is subject to more than one rational interpretation.' " *Murphy v. Murphy*, 10th Dist. No. 12AP-1079, 2013-Ohio-5776, ¶ 37, quoting *Rohr v. Williams*, 7th Dist. No. 06 MA 171, 2007-Ohio-7207, ¶ 22. If the trial court finds an ambiguity, it must clarify and construe its original property division so as to effectuate its judgment. *Cameron* at ¶ 11. If the trial court finds no ambiguity, it must enforce the decree as written. *Id.*

{¶ 9} In the case at bar, the parties did not consent or agree in writing to the modification of the divorce decree. Consequently, Johnson sought a clarification of the decree on the basis that the provision dividing the IBM pension benefits was ambiguous. The ambiguity Johnson alleges arises from the divorce decree's failure to specify a particular date for valuation and division in the provision awarding Johnson "an equal division" of McCarthy's IBM pension benefits. (Nov. 16, 2005 Judgment Entry – Decree of Divorce at 15.) No ambiguity exists, however, because the decree contains a provision

designating the duration of the parties' marriage for purposes of asset valuation and division.

{¶ 10} A trial court must specify in a divorce decree the dates it used in determining the duration of the marriage. R.C. 3105.171(G). The duration of a marriage determines whether property is marital or non-marital and establishes the appropriate dates for property valuation and division. *Liming v. Damos*, 4th Dist. No. 08CA34, 2009-Ohio-6490, ¶ 26; *Alexander v. Alexander*, 10th Dist. No. 09AP-262, 2009-Ohio-5856, ¶ 35, 37. Generally, the valuation assigned to a marital asset is the asset's value on the date the marriage terminates. *Saks v. Riga*, 8th Dist. No. 101091, 2014-Ohio-4930, ¶ 16. Although a court may choose an alternate valuation date for certain assets, it must specify the date and explain its reasons for choosing it. *Meeks v. Meeks*, 10th Dist. No. 05AP-315, 2006-Ohio-642, ¶ 15.

{¶ 11} In this case, the trial court found the parties' marriage terminated on September 19, 2005. The trial court, however, did not reiterate that date or specify any other valuation date in the provision of the divorce decree that divided the IBM pension benefits. Rather, the decree simply states, "[Johnson] is awarded an equal division of the [IBM] personal pension plan." (Nov. 16, 2005 Judgment Entry – Decree of Divorce at 15.) In such a situation—where the provision dividing a marital asset fails to specify a date for valuation and division—the date of the marriage's termination controls. *Keller v. Keller*, 5th Dist. No. 18 CAF 01 0008, 2018-Ohio-3141, ¶ 18; *Fernando v. Fernando*, 10th Dist. No. 16AP-788, 2017-Ohio-9323, ¶ 8-9; *Oberst v. Oberst*, 5th Dist. No. 09-CA-54, 2010-Ohio-452, ¶ 34.

{¶ 12} In *Fernando*, the trial court ordered the equal division of the parties' retirement accounts but did not specify in the property division a date for the valuation or division of the accounts. *Id.* at ¶ 9. Because the divorce decree stated that the parties' marriage terminated on October 19, 2016, we concluded that the decree required the valuation and equal division of the retirement accounts to occur on that date. *Id.* Likewise, the Fifth District Court of Appeals has concluded that the absence of a valuation date in a property award does not create an ambiguity in the property division where the decree establishes the date on which the marriage terminated. *Keller* at ¶ 18; *Oberst* at ¶ 33-34. In *Keller*, the court stated:

> Here, we find no ambiguity in the divorce decree. It states, "the parties further agree that the parties shall divide equally all retirement/employment benefits." * * * While the parties could have agreed to a future date in the divorce decree, they did not. As such, we hold the divorce decree unambiguously states that the IBM and Nationwide pension plans are to be equally divided, effective as of the termination of the marriage, on July 31, 2015.

*Keller* at ¶ 18.

{¶ 13} Here, like in *Fernando*, *Keller*, and *Oberst*, the trial court ordered an equal division of retirement assets, but failed to specify a valuation and division date in the property award. Like the trial courts in the cited cases, the trial court here included in the divorce decree the date on which the parties' marriage terminated, thus providing a date for the valuation and division of all marital property. Consequently, applying *Fernando*, *Keller*, and *Oberst* to this case, we conclude that the trial court did not err in finding the parties' divorce decree unambiguous regarding the valuation and division date for the IBM pension. As the trial court found, the decree orders that valuation and division occur on the date the parties' marriage terminated, September 19, 2005.

{¶ 14} In arguing otherwise, Johnson directs this court to the provision of the divorce decree that divided McCarthy's Sears pension benefits and compares it to the provision dividing the IBM pension benefits. With regard to the Sears pension, the decree ordered, "[Johnson] is awarded an equal division of the *marital* share of the Sears pension plan as determined by a coverture formula in the ratio of the number of years of employment of [McCarthy] during the marriage to the total years of his employment." (Emphasis sic.) (Nov. 16, 2005 Judgment Entry – Decree of Divorce at 15.) With regard to the IBM pension, the decree ordered, "[Johnson] is awarded an equal division of the [IBM] personal pension plan." *Id.*

{¶ 15} Johnson points out that, unlike the provision dividing the IBM pension benefits, the Sears pension provision specifically divided the "*marital* share" of the pension benefits. *Id.* According to Johnson, because the trial court excluded the word "marital" in the provision dividing the IBM pension, the trial court intended that Johnson share in the entirety of McCarthy's IBM pension benefits. Thus, Johnson contends, to capture all the

benefits she is entitled to, valuation of the IBM pension cannot occur until the date of McCarthy's retirement.

{¶ 16} We are not persuaded by Johnson's argument. The trial court emphasized the word "marital" in the division of the Sears pension because McCarthy earned a portion of that pension prior to the parties' marriage. McCarthy began participating in the Sears pension plan on January 1, 1978, over four years before the parties' June 19, 1982 wedding date. McCarthy terminated his participation in the Sears pension plan on June 12, 1997, well before the parties' 2005 divorce. To ensure that it only divided the portion of the Sears pension that qualified as a marital asset, the trial court expressly limited its division to the "*marital* share." *Id.* The inclusion of the word "marital," therefore, does not imply that the trial court intended Johnson to receive half of all McCarthy's IBM pension benefits.

{¶ 17} Johnson also argues that ambiguity arises because the decree ordered the application of the traditional coverture method to divide the Sears pension benefits, but not the IBM pension benefits. Johnson, however, is incorrect; the decree required both pensions be divided in accordance with the frozen coverture method.

{¶ 18} Courts use both the traditional coverture method and the frozen coverture method to divide pension benefits that are vested, but not mature, at the time of a divorce. Application of the traditional coverture method begins with a calculation of the value of the pension benefits at the time of the participant's spouse retirement. *Cameron*, 10th Dist. No. 12AP-349, 2012-Ohio-6258, at ¶ 18; *Thompson v. Thompson*, 196 Ohio App.3d 764, 2011-Ohio-6286, ¶ 33 (10th Dist.). That value is multiplied by a traditional coverture fraction, in which the numerator is the number of years the participant spouse was employed during the marriage, and the denominator is the number of years of total employment. *Cameron* at ¶ 18; *Thompson* at ¶ 33. The resulting amount is the marital portion of the pension benefit. *Id.* The non-participant spouse then receives his or her percentage share of the marital portion. *Id.*; *Cameron* at ¶ 18. The traditional coverture method "allows the non-participant spouse to share in the benefit of any post-divorce increase in the value of his or her unmatured proportionate share attributable to the participant's continued participation in the retirement fund." *Cameron* at ¶ 19.

{¶ 19} Under the frozen coverture method, the value of the pension is "frozen" on the date the parties' marriage terminates. *Id.* at ¶ 17. The pension benefits to the participant

spouse are calculated as if the participant spouse had retired on the marriage termination date, using the participant spouse's then-existing salary and years of service. *Id.*; *Ford*, 10th Dist. No. 14AP-954, 2015-Ohio-3571, ¶ 14. The non-participant spouse then receives his or her percentage share of those benefits. Ultimately, the non-participant spouse receives less benefits under the frozen coverture method (as opposed to the traditional coverture method) "because the nonparticipa[nt] spouse does not share in post[-]divorce increases that accrue to the pension as a result of increases in salary or years of service." *Archer v. Dunton*, 9th Dist. No. 29091, 2019-Ohio-1971, ¶ 11.

{¶ 20} Where a trial court awards a percentage of an unmatured pension to a non-participant spouse as of the date a marriage terminates, the only permissible method for determining the amount owed to the non-participant spouse is the frozen coverture method. *Keller*, 5th Dist. No. 18 CAF 01 0008, 2018-Ohio-3141, at ¶ 21-22; *accord Cameron* at ¶ 25 (recognizing that courts have held that, when a property award specifies a date certain for the division of an unmatured pension, the frozen coverture method of division applies). The traditional coverture method cannot apply because it defers valuation until the participant spouse retires. Only the frozen coverture method permits valuation of pension benefits on the date a marriage terminates. Thus, here, because the trial court ordered the equal division of the IBM and Sears pension benefits on the date the parties' marriage terminated, the frozen coverture method applies to both pensions.

{¶ 21} It appears that Johnson believes the trial court ordered the use of the traditional coverture method to divide the Sears pension benefits because the trial court required the use of a coverture fraction in dividing those benefits. Typically, a coverture fraction is only used in the traditional coverture method. However, it also comes into play under the frozen coverture method if the participant spouse's employment pre-dates the marriage. "Where the participant spouse star[t]ed working before the marriage, the court can apply a coverture fraction to determine the marital portion of the 'frozen' amount" of pension benefits. *Cameron* at ¶ 17. In a frozen coverture fraction, the numerator is the number of years of employment while the parties were married, and the denominator is the total number of years of employment at the time of the divorce. *Id.*

{¶ 22} Here, the trial court ordered the application of a coverture fraction in determining Johnson's share of the Sears pension benefits because McCarthy began

working at Sears prior to the marriage. Consequently, determination of the marital portion of the Sears pension benefits required use of "the ratio of the number of years of employment of [McCarthy] during the marriage to the total years of his employment." (Nov. 16, 2005 Judgment Entry – Decree of Divorce at 15.) We recognize that the trial court used the total years of McCarthy's employment, rather than the years of employment at the time of the divorce, as the denominator in the frozen coverture fraction. However, because McCarthy left Sears long before the end of his marriage, his total years of employment at Sears was also the number of years of employment at the time of the divorce. Thus, in this case, the trial court mandated the use of a coverture fraction to determine the amount of benefits due to Johnson as of the marriage termination date under the frozen coverture method.

{¶ 23} In sum, we conclude the trial court did not err in finding the provision dividing the IBM pension benefits unambiguous. Accordingly, we overrule Johnson's first assignment of error.

{¶ 24} By her second assignment of error, Johnson argues that the trial court erred in modifying the judgment to provide for the division of the IBM pension benefits as of the date the parties' marriage terminated. As we concluded above, the decree unambiguously required the division of the IBM pension benefits on the date the parties' marriage terminated. In so finding, therefore, the trial court did not modify the decree. Accordingly, we overrule Johnson's second assignment of error.

{¶ 25} By her third assignment of error, Johnson argues that the trial court erred in refusing to modify the decree to order the division of the IBM pension pursuant to the traditional coverture method. The trial court, however, lacked the authority to modify the property division it mandated in the decree. *See* R.C. 3105.171(I). Accordingly, we overrule Johnson's third assignment of error.

{¶ 26} For the foregoing reasons, we overrule Johnson's three assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

DORRIAN and NELSON, JJ., concur.

_____