[Cite as *Jackson v. Jackson*, 2024-Ohio-1755.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Marjorie Jackson,                                            :

      Plaintiff-Appellee,                          :            No. 23AP-325
                                                                                    (C.P.C. No. 22DR-1401)
v.                                                                     :
                                                                              (REGULAR CALENDAR)
Dwayne Jackson,                                            :

      Defendant-Appellant.                      :

D E C I S I O N

Rendered on May 7, 2024

**On brief:** *Trolinger Law Offices LLC,* and *Christopher L. Trolinger* for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Dwayne Jackson, appeals from the May 11, 2023 judgment entry and divorce decree granted by the Franklin County Court of Common Pleas, Division of Domestic Relations. For the following reasons, we reverse and remand to the trial court for further proceedings.

## I. Facts and Procedural History

{¶ 2} Dwayne and plaintiff-appellee, Marjorie Jackson, were married in Columbus, Ohio on September 24, 1994. The marriage produced one child, who was born on June 19, 2004. (May 3, 2022 Compl. at ¶ 2.) In 2022, Marjorie filed for divorce. In her complaint, Marjorie asserted the parties owned two properties in Columbus: a residential property located at 1970 Greenway Avenue North and a commercial property located at 997 Mount Vernon Avenue. (*Id.* at ¶ 4.) No counterclaim was filed by Dwayne. Prior to the

commencement of trial, Marjorie moved for an order permitting the sale of the commercial property, with the disposition of sale proceeds to be determined at a later date. (Aug. 9, 2022 Mot.) Dwayne filed his response to the motion the following day and asserted he wanted to keep the property, therefore its disposition should be determined at the same time as all other marital assets. (Aug. 10, 2022 Def.'s Resp. to Pl.'s Mot.) The motion was dismissed as moot for failure to prosecute at the commencement of trial. (Apr. 12, 2023 Tr. Vol. I at 4.)

{¶ 3} Both parties filed pre-trial statements once the matter was scheduled for trial. The statements differed on several notable issues, including whether the marriage's termination date should be the date of separation on January 8, 2021 (per Marjorie) or the date of the final hearing (per Dwayne), as well as a property in West Virginia that Marjorie listed as an asset but Dwayne did not. (Sept. 28, 2022 Pl.'s Pre-trial Statement at 2; Oct. 2, 2022 Def.'s Pre-trial Statement at 2.) The parties' estimated valuations of the two Columbus properties were fairly close, but both statements independently noted each of the properties still required an appraisal. (*Id.*)

{¶ 4} Trial commenced on April 12, 2023. Both parties proceeded pro se. Under its statutory mandate, the trial court was tasked with classifying property as either separate or marital property, and, upon making such findings, determining an equitable division of the property in accordance with R.C. 3105.171. Thus, the trial court was required to undergo a fact-intensive inquiry before it could order the division of assets.

{¶ 5} At trial, Marjorie testified that she had submitted a complete list of all assets, debts, liabilities, and income. Dwayne testified that he had not submitted a complete list. As a result, he was not permitted to rely on his list during trial. (Tr. Vol. I at 19-20.) Marjorie and Dwayne both gave testimony about their relationship since she moved out of their shared home on January 8, 2021. They affirmed they had lived separate and apart continuously since the date she moved out. (Tr. Vol. I at 56-58.)

{¶ 6} Neither Marjorie nor Dwayne hold college degrees but both are high school graduates. (Tr. Vol. I at 61.) Dwayne had begun a new position as a full-time manufacturing operator at the time of trial, earning $20 an hour. (Tr. Vol. I at 62.) Previously, he had worked for a manufacturing company. Before trial, Dwayne submitted to the court that he had an annual income of $57,000 in that position, but he testified at trial that he actually

earned closer to $30,000. (Tr. Vol. I at 64-65.) Dwayne testified he previously had a pension that he withdrew in December 1996 when they purchased their house for $75,000. (Tr. Vol. I at 68-69; Ex. 4.) He estimated he received somewhere between $32,000 and $35,000, all of which was used for the down payment on the marital residence. (Tr. Vol. I at 67-68.) Marjorie testified that she recently retired and took out a partial lump sum option payment ("PLOP") from her own pension, totaling $86,000 after taxes. She currently receives a monthly pension of $3,700 that will continue for the rest of her life. (Tr. Vol. I at 21, 48-49.)

{¶ 7} Marjorie used the PLOP to pay off her car loan and pay down a $108,000 home equity line of credit ("HELOC"), which she testified had a balance of $53,000 at the time of trial. (Tr. Vol. I at 26.) The parties had taken out the HELOC to renovate the marital residence and pay the remaining mortgage of their jointly owned commercial property. (*Id.*) She estimated the remaining balance on the commercial property mortgage was $23,000 before it was fully paid off with HELOC funds. (Tr. Vol. I at 6, 27-29.)[1] Neither party provided an estimated value for the commercial property.[2] Both parties agreed the marital residence was jointly owned and, at the time of trial, the property was not encumbered by a mortgage or lien other than the HELOC. (Tr. Vol. I at 69.) Marjorie testified that the residential property had been informally appraised at $141,000.[3] (Tr. Vol. I at 28-29.)

---

[1] At multiple points during trial, Marjorie testified that the remaining mortgage on the commercial property was paid off with funds from the HELOC. (*See* Tr. Vol. I at 6, 27-39.) We note that in the divorce decree, the trial court addressed this issue in its findings of fact as follows: "Conflicting testimony was provided to the Court regarding financial encumberment of the commercial property. Plaintiff testified that she provided a lump sum payment in early 2023 to its mortgage but the amount remaining of the mortgage, if any, remains unknown to this Court due to insufficient evidence presented." (May 11, 2023 Divorce Decree at 5-6.)

[2] Dwayne asserts the trial court had access to a value for the commercial property because the 2022 property tax bill was submitted into evidence at trial. The bill contains a total assessed value of $26,950, which it describes as 35 percent of the property's market value. Extrapolating from this, Dwayne asserts the market value of the property is $77,000. (Appellant's Brief at 14, citing Ex. 7.) While not expressly argued, we note the same exhibit also contains a 2022 property tax bill for the residential property, which is assessed at $26,430—a difference of only $520 between the taxable values. (Ex. 4.)

[3] In addition to Marjorie's testimony, she introduced printouts from two real estate websites (Zillow and Redfin) that included estimated prices for the residential property. Both printouts are dated August 23, 2022. The Zillow printout reflects an estimated value of $141,000, and the Redfin printout estimates the home's value at $206,143. (Tr. Vol. I at 28; Ex. 4.)

{¶ 8} The parties agreed to keep their respective vehicles. (Tr. Vol. I at 29-30.) Both parties acknowledged owing income tax but were unaware of the specific amount at the time of trial. (Tr. Vol. I at 32-33.) Similarly, Marjorie testified the parties owed property tax on both the residential and commercial properties. Copies of the 2022 property tax bills for both properties were introduced at trial and showed a delinquency of $2,060.72 for the residential property and $4,045.52 for the commercial property. (Tr. Vol. I at 33-34; Ex. 7.)

{¶ 9} At trial, Dwayne testified about a $7,000 loan he took out in 2022 to renovate the commercial property they had previously operated as a restaurant and bar. Marjorie cosigned that loan. (Tr. Vol. I at 37-38.) The parties had previously held a liquor license for the establishment, which Marjorie testified was in her name and had been either cancelled or suspended for nonpayment approximately a year earlier. (Tr. Vol. I at 39-40.) She estimated it would cost between $7,000 and $9,000 to reactivate the license. (Tr. Vol. I at 42.)

{¶ 10} At the time of trial, Dwayne was residing in the marital home and Marjorie was renting an apartment. (Tr. Vol. I at 67.) Regarding the personal property at the residence, the parties stipulated the kitchen appliances would remain with the residence and Dwayne would keep the remaining household items and furniture. They were unable to estimate the value of these items when asked at trial. (Tr. Vol. I at 51-52.) The parties did not have any joint accounts at the time of trial, but each separately had their own checking and savings accounts. (Tr. Vol. I at 53-55.) Dwayne testified that during their marriage, he borrowed money from his mother's assets to assist with the parties' shared expenses like bills and mortgage payments. (Tr. Vol. I at 83-84.) He stated that, in total, he borrowed $75,000 against his mother's house and $7,000 against her life insurance policy. (Tr. Vol. I at 84-85.)

{¶ 11} Following a two-day trial, the trial court entered a judgment entry and decree of divorce on May 11, 2023. The entry first acknowledged that both parties testified and submitted exhibits, all of which were admitted, and then recited the oral stipulations the parties had reached at the beginning of trial. In relevant part, the trial court memorialized that "[t]he parties separated on approximately January 8, 2021," that since litigation commenced, the parties' only child had become a legal adult, and that "[t]he parties have

lived separate and apart without cohabitation and without interruption for a period of one (1) year or more." (May 11, 2023 Divorce Decree at 3-4.) Noting that several other matters remained contested, the trial court proceeded to make findings of fact and order the division of property in accordance with the findings. It is from this divorce decree that Dwayne filed his appeal.

## II. Assignments of Error

{¶ 12} Dwayne presents the following assignments of error for our review:

> [I.] The trial court erred and abused its discretion in determining a de facto termination date of marriage without any justification or analysis contrary to R.C. 3105.171(A)(2)(b).
>
> [II.] The trial court erred and abused [its] discretion by failing to value the marital property and failing to order the property sold and equally divided as the division as ordered was not equitable.
>
> [III.] The trial court erred and abused its discretion in failing to value and equally and equitably divide plaintiff's retirement assets.
>
> [IV.] The trial court erred and abused its discretion by failing to make any required findings of fact and conclusions of law regarding the equitability of the property division pursuant to R.C. 3105.171(G) or make findings that the factors in R.C. 3105.171(F) were considered.

## III. Discussion

### A. Law and Standard of Review

{¶ 13} During a contested divorce, the trial court is charged with making an equitable division of property between the spouses. R.C. 3105.171(B). Each spouse is entitled to an equal division of the marital property. If the trial court finds an equal division would be inequitable, it may divide the marital property to produce an equitable result after considering all relevant statutory factors. R.C. 3105.171(C)(1). "Equality of distribution, while an admirable goal in many situations, must yield to concerns for equity." *Katz v. Katz*, 10th Dist. No. 13AP-409, 2014-Ohio-1255, ¶ 14.

{¶ 14} To craft this division, the trial court must first determine the duration of the marriage because "[t]he duration of a marriage determines whether property is marital or

non-marital and establishes the appropriate dates for property valuation and division." *Johnson v. McCarthy*, 10th Dist. No. 17AP-655, 2019-Ohio-3489, ¶ 10. "R.C. 3105.171(A)(2) authorizes a trial court, in the exercise of its sound discretion, to utilize a de facto date of termination of the marriage if such is equitable in a particular case." *Kramer v. Kramer*, 10th Dist. No. 18AP-933, 2019-Ohio-4865, ¶ 16, citing *Mantle v. Sterry*, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 10. We therefore review the selection of a de facto termination date for abuse of discretion. *Heyman v. Heyman*, 10th Dist. No. 05AP-475, 2006-Ohio-1345, ¶ 32. A trial court abuses its discretion when it acts in a manner that is unreasonable, arbitrary, or unconscionable. *Ford v. Ford*, 10th Dist. No. 14AP-954, 2015-Ohio-3571, ¶ 10. "An abuse of discretion may also be found where a trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' " *Vacheresse v. Paulchel*, 10th Dist. No. 22AP-583, 2023-Ohio-3226, ¶ 17, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶ 15} Once the marital period has been determined, the court must designate property as either marital or separate. Subject to some exceptions, marital property consists of all real and personal property, all interests in real or personal property, and all appreciation on separate property acquired or occurring during the marriage. R.C. 3105.171(A)(3). If otherwise qualifying, marital property may include retirement benefits that accrued during the marriage. R.C. 3105.171(A)(3)(a)(i). Separate property consists of property acquired prior to the date of marriage, with non-marital funds after separation, or through inheritance or gift during the marriage. R.C. 3105.171(A)(6); *Katz* at ¶ 14. The characterization of property as marital or separate is a factual inquiry for the trial court and reviewed on appeal under a manifest weight of the evidence standard. *Taub v. Taub*, 10th Dist. No. 08AP-750, 2009-Ohio-2762, ¶ 15.

{¶ 16} Once property has been classified, the trial court must determine the value of marital assets so it may determine an appropriate division. *Sangeri v. Yerra*, 10th Dist. No. 19AP-675, 2020-Ohio-5520, ¶ 24. Most commonly, the valuation assigned to marital property is the asset's value at the time of divorce. *Johnson* at ¶ 10. However, a trial court may select an alternative valuation date for a specific asset, provided it specifies the date and explains its rationale. *Id.* If the provision of the divorce decree dividing an asset is silent as to the valuation date, the marriage's end date controls. *Id.* at ¶ 11. The reviewing

court examines the trial court's valuations for abuse of discretion. *Sangeri* at ¶ 25. The trial court's determination will not be disturbed on appeal if there is some competent, credible evidence to support its valuation of an asset. *Ford* at ¶ 10.

### B. First Assignment of Error

{¶ 17} Dwayne's first assignment of error relates to the trial court's selection of a de facto termination date for the marriage without first making the findings required by R.C. 3105.171(A)(2)(b). The duration of a marriage is defined in statute as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce." R.C. 3105.171(A)(2)(a). However, a trial court may select different dates to define the duration of the marriage if the court finds using either or both dates would be inequitable. R.C. 3105.171(A)(2)(b).

{¶ 18} This court has recognized several common factors used to determine the appropriateness of a de facto date of termination. They include "whether the parties made a clear and bilateral decision to separate, whether the marriage was irretrievably broken at the time of separation, whether the separation was friendly, whether the parties engaged in sexual relations after the date of separation, whether either party had begun to cohabitate with another following separation, and whether the parties maintained separate financial arrangements." *Heyman*, 2006-Ohio-1345 at ¶ 33. "As a general rule, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, and continually maintain separate residences, separate business activities, and separate bank accounts" some time before the date of the divorce decree. *Kramer*, 2019-Ohio-4865 at ¶ 16.

{¶ 19} Here, the final court hearing occurred on April 13, 2023. However, the trial court found "[t]he dates of the marriage are from September 24, 1994 to January 8, 2021." (Divorce Decree at 5.) During trial, the court asked both Marjorie and Dwayne to confirm they separated on January 8, 2021, the day Marjorie moved out of the marital residence. (Tr. Vol. I at 56-57.) The court also asked whether they engaged in sexual relations after that date and whether they continued to present themselves as husband and wife. (Tr. Vol. I at 57.) Marjorie testified they had one sexual encounter after January 8, 2021. (Tr. Vol. I at 58.) She said they did not present themselves as husband and wife. (Tr. Vol. I. at 57.) On the other hand, Dwayne responded, "No. I mean, yeah, I said she's my wife." (Tr. Vol. I

at 57-58.)  Marjorie also testified she cosigned for a loan Dwayne took out in 2022, though a specific date was not provided.  (Tr. Vol. I at 36-37.)

{¶ 20} The trial court did not provide its reasoning for deviating from the presumptive termination date contained in R.C. 3105.171(A)(2)(a) or cite which equitable factors were relied on to justify using the alternate date.  While the transcript reflects some indication of what testimony the trial court found persuasive, this reasoning is not set forth in the decision and requires us to guess at the trial court's logic.  Moreover, the transcript also contains testimony that conflicts with the selection of the de facto termination date, including the cosigned loan and use of joint accounts, all of which occurred after the de facto termination date.  At trial, Dwayne introduced bank statements for a joint checking account that listed both parties' names as late as October 25, 2021.  (Ex. B.)  And so, without any explanation, we must guess why the trial court did not find those facts indicative of an intermingled life even after Marjorie moved out.

{¶ 21} Because the final hearing date is the presumptive termination date for the marriage under R.C. 3105.171(A)(2), the use of an alternate date must be predicated on a finding that using the presumptive date would be inequitable.  R.C. 3105.171(A)(2)(b); *Dach v. Homewood*, 10th Dist. No. 14AP-502, 2015-Ohio-4191, ¶ 12.  While the selection of an alternate date is well within the trial court's discretion, the decision may not be arbitrary or without reason.  *See Meeks v. Meeks*, 10th Dist. No. 05AP-315, 2006-Ohio-642, ¶ 50 ("[A] trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances.").  However, by failing to make an explicit finding that the date of the final hearing would be inequitable and failing to provide any reasoning for its decision, the trial court's use of a de facto termination date was in error.  *See, e.g.*, *Dach* at ¶ 12; *Wells v. Wells*, 9th Dist. No. 25557, 2012-Ohio-1392, ¶ 14 (finding trial court did not abuse its discretion where court's journal entry reflected consideration of the appropriate factors).  For the foregoing reasons, we sustain Dwayne's first assignment of error.

## C. Second Assignment of Error

{¶ 22} In his second assignment of error, Dwayne asserts the trial court failed to value the marital property, failed to order the property sold, and ultimately failed to order an equitable division of the marital property.

{¶ 23} In contested divorce proceedings, after it has determined the duration of the marriage, the trial court must classify property as either marital or separate. The court must then make a division of the property based on the factors listed at R.C. 3105.171(F).

{¶ 24} When crafting the award, the trial court "must generally assign and consider the values of marital assets in order to equitably divide those assets." *Raymond v. Raymond*, 10th Dist. No. 11AP-363, 2011-Ohio-6173, ¶ 23. "Although a trial court possesses broad discretion to determine the value of marital property, it may not omit valuation altogether." *Id.* at ¶ 22. Nor may it assign an unknown value to an asset by reason of insufficient evidence. *Id.* at ¶ 24. In such circumstances, the proper response is to instruct the parties to provide the necessary evidence, not to forgo the valuation. *Id.* While we do not prescribe any one specific method of appraisal, we do require the trial court to have a rational evidentiary basis for making its findings. *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 38. Accordingly, our review is focused on evaluating how the court arrived at a certain value. *See id.* at ¶ 38, citing *James v. James*, 101 Ohio App.3d 668, 681 (2d Dist.1995).

{¶ 25} When dividing marital property, the trial court must consider all relevant factors, including those specifically enumerated in R.C. 3105.171(F). These factors include, in relevant part, the liquidity of the property, the economic desirability of retaining an intact asset, and the consideration of the respective tax consequences of the property division. R.C. 3105.171(F). "An exhaustive itemization by the trial court of every factor set forth in R.C. 3105.171(F) is unnecessary; however, the court's decision must clearly indicate that the factors were considered before the property division was made." *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 40. The trial court must include in its final decision written findings of fact to support its determination that the marital property has been equitably divided. R.C. 3105.171(G).

{¶ 26} Having already addressed the duration of the marriage in Dwayne's first assignment of error, we next turn to whether the trial court appropriately classified property as separate or marital as mandated by R.C. 3105.171(B).

{¶ 27} There are several instances in the divorce decree where assets or liabilities are acknowledged but left undetermined, most notably with regard to retirement benefits. As a general rule, interests in retirement benefits that accrue during the marriage are

considered marital property. *See* R.C. 3105.171(A)(3)(a)(i). Here, the trial court acknowledged Marjorie retired after the selected de facto termination date, on December 30, 2022, received a PLOP in the net amount of $86,000, and will receive a monthly benefit of $3,700 until death. (Divorce Decree at 7.) After making this finding, the decree is silent as to whether the trial court found this is marital or separate property. Similarly, the trial court noted that Dwayne "at one time had a pension with OPERS but did not testify to any other interest" in any other retirement benefit. (*Id*.) At trial, Dwayne provided testimony that he withdrew his OPERS pension in 1996 to make a down payment on their house, which Marjorie confirmed. (Tr. Vol. I at 67-68.) While the trial court determined the house is marital property, the decree is silent as to whether any portion of Dwayne's pension accrued before the marriage, and, if so, whether some of the pension funds used for the down payment on the residential property are separate property. (Divorce Decree at 5.)

{¶ 28} These considerations are not inconsequential. "A person's down payment on a marital residence can retain its identity as separate property, as long as it is traceable." *Neighbarger v. Neighbarger*, 10th Dist. No. 05AP-651, 2006-Ohio-796, ¶ 43. Moreover, the "commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). If Dwayne's pension funds for the down payment accrued before the marriage and are traceable, Dwayne could have a separate property interest in the marital residence that was not recognized in the divorce decree.

{¶ 29} We also note the trial court's failure to qualify the parties' personal debts as either marital or separate. The trial court determined each party would bear responsibility for any debts incurred in their individual names other than the cosigned loan from 2022. (Divorce Decree at 11.) However, the trial court also made a finding that "[Marjorie] ha[d] no known credit card debt at the time of the contested trial. [Marjorie] testified that she paid off close to $50,000 in credit card debt when she received her PLOP after retiring in late 2022." (Divorce Decree at 7.) When making this finding, the trial court did not specify whether the $50,000 debt or the PLOP funds used to reduce it were separate or marital property. To illustrate this point, if, on remand, the trial court finds the credit card debt was separate property, but Marjorie's PLOP funds were marital, that would shift the equities of the property division by a significant margin.

{¶ 30} With these issues in mind, we turn to the final responsibility of the trial court: making an equitable division of marital property. We have previously held that a trial court abuses its discretion by failing to consider the R.C. 3105.171(F) factors in making a division of marital property. *Mantle*, 2003-Ohio-6058 at ¶ 18. The divorce decree in this case is replete with instances where the trial court acknowledged it had insufficient evidence to make a valuation. For example, the trial court stated, "[I]t cannot determine the fair market value of the marital residence." (Divorce Decree at 5.) Similarly, the trial court found that, due to a lack of evidence, "it cannot determine the fair market value of the commercial property." (Divorce Decree at 6.) In another example, the trial court addressed debts incurred by Dwayne during the marriage by stating it was "unable to determine whether the debt(s) are separate or marital debt." (Divorce Decree at 8.)

{¶ 31} Despite these acknowledgments, the trial court proceeded to order a division of property. Notably, the trial court awarded the marital residence to Marjorie and the commercial property to Dwayne, with both parties bearing full responsibility for any accrued tax arrearages on the respective properties. The trial court provided no explanation for this division, despite recognizing both parties wished to retain the marital residence, Dwayne had exclusively occupied the residence since January 8, 2021, and fair market values for both properties could not be determined from the evidence presented at trial. In their pre-trial statements, both Dwayne and Marjorie stated neither property had been formally appraised and they could not estimate their value. (*See* Sept. 28, 2022 Pl.'s Pre-trial Statement at 2; Oct. 2, 2022 Def.'s Pre-trial Statement at 2.) Apart from its recognition that Marjorie informally valued the residential property at $141,000, the trial court expressly stated it did not have any evidence to value either property. (*See* Divorce Decree at 5-6.) Despite this, the court still issued a property award. This leaves the parties with an unknown—but potentially consequential—disparity in the property award made by the trial court, with no findings to justify the possible difference.

{¶ 32} While we recognize that a trial court has broad discretion in making divisions of property, the parties' failure to produce competent, credible evidence at trial does not relieve the court of its statutory duties. We reiterate that an equitable division of property begins with a valuation of the parties' assets and liabilities. We also acknowledge that "courts, including this court, have found some limitations to the general declaration that a

trial court must value all marital property." *Roberts v. Roberts*, 10th Dist. No. 08AP-27, 2008-Ohio-6121, ¶ 19. But those instances are rare and do not involve the valuation of "major" assets like the commercial and residential properties at issue in this case. *Id.* Regardless of what evidence the parties provide, a trial court must assign an appropriate value to the major marital assets as part of its duties under R.C. 3105.171(G). *Franklin v. Franklin*, 10th Dist. No. 11AP-713, 2012-Ohio-1814, ¶ 5.

{¶ 33} The properties the trial court stated it could not assign a value to but divided nonetheless—the marital residence and the commercial property—were undisputedly major assets of the marital estate. Nothing in the record demonstrates the properties were of equal value, and the court did not account for other contributions to the marital estate that could justify an unequal, but equitable, division. The court similarly failed to value the marital and individual liabilities and instead ordered each party to be responsible for their respective debts without explanation. This extends to the treatment of Marjorie's $50,000 credit card debt, which she testified was paid off with her pension funds. Without any analysis, the trial court's decisions appear ill-supported by the evidence and the law.

{¶ 34} While we could piece together possible reasons for the trial court's decisions from the record, it is axiomatic that a court speaks through its journal entries. *Oladele v. Adegoke-Oladele*, 10th Dist. No. 08AP-92, 2008-Ohio-4005, ¶ 4. And where the trial court fails to "make written findings of fact that support the determination that the marital property has been equitably divided," it has not performed its statutory duty under R.C. 3105.171(G).

{¶ 35} Furthermore, while not acknowledged in the divorce decree, it was undisputed at trial that Dwayne drew from his own pension at significant penalty in order to provide the down payment on the marital residence in 1996. Likewise, while this was recognized by the trial court, Marjorie used a portion of her pension payout to reduce the HELOC loan, which the trial court recognized as marital debt. The trial court also broadly held each party responsible for any individual debt, despite the express recognition that it could not determine whether Dwayne's debts were separate or marital. In contrast, the trial court specified that Marjorie had no known individual debt at the time of trial, while acknowledging she used a payment from her pension to satisfy personal credit card debt incurred during the marriage.

{¶ 36} The trial court's errors arose when it continued to divide the marital estate after recognizing it was ill-equipped to do so. Because the court failed to classify all disputed property as either separate or marital, failed to make an equitable distribution of liabilities and assets based on appropriate valuations, and failed to demonstrate it considered the applicable statutory factors through written findings of fact, the trial court abused its discretion. Accordingly, we sustain Dwayne's second assignment of error.

**D. Third Assignment of Error**

{¶ 37} In his third assignment of error, Dwayne asserts the trial court failed to value and equally and equitably divide Marjorie's retirement assets. While briefly discussed in Dwayne's second assignment of error, it is appropriate to address it here independently.

{¶ 38} In the divorce decree, the trial court found as follows with respect to Dwayne and Marjorie's retirement benefits:

> Plaintiff retired on December 30, 2022 and received a partial lump sum option payment ("PLOP") from her Ohio Public Employees Retirement System (OPERS) Pension. She received her PLOP in the amount of $100,000 and, after taxes and associated fees, she received a net amount of $86,000. Defendant signed off on Plaintiff's retirement prior to contested trial when he executed a "Spousal Consent" form on October 3, 2022.
>
> In addition to the PLOP, Plaintiff receives a net amount of $3,700.00 per month from her pension and will continue to receive until her death.
>
> Defendant testified that he at one time had a pension with OPERS but did not testify to any other interest in any pension, profit sharing, IRA, 401 (K), deferred compensation, or other retirement plan(s).

(Divorce Decree at 7.) In addition to the testimony about each party's respective retirement interests, the record contains a copy of Marjorie's Account Value letter from OPERS, dated September 1, 2022, reflecting a retirement account value of $300,896.93 as of the letter date and 33.35 years of total service credit as of July 30, 2022. (Ex. 5.) The court ordered that each party "shall retain any and all interest in any pension, profit sharing, IRA, 401(k), deferred compensation, or other retirement plan" that he or she currently holds. (Divorce Decree at 9-10.)

{¶ 39} Pension and retirement benefits acquired by a spouse during the marriage are generally considered marital assets subject to division. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 6; *see also* R.C. 3105.171(A)(3)(a)(i). The Supreme Court of Ohio has previously held that "[a] vested pension plan accumulated during marriage is a marital asset and must be considered * * * in dividing marital assets and liabilities to ensure that the result reached is equitable." *Holcomb v. Holcomb*, 44 Ohio St.3d 128 (1989), syllabus. "When distributing these marital assets, a trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." *Erb v. Erb*, 75 Ohio St.3d 18, 20 (1996), citing *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178 (1990).

{¶ 40} A trial court must compute the non-employee spouse's proportionate share of the retirement benefit by calculating the ratio of the time employed while married to the total amount of time employed. *Hoyt* at 182. This formula is often referred to as the "coverture fraction." *Daniel v. Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, ¶ 15. Once the proportionate share is determined, the trial court may then proceed to dispose of the asset. "The trial court should structure a division which will best preserve the fund and procure the most benefit to each party." *Hoyt* at 183. The particulars will depend on the circumstances of each individual case—the trial court must attempt to preserve the asset's optimal value, disentangle the parties' financial affairs, and structure an equitable division of property from the entire marital estate, all without violating the terms and conditions of the pension plan. *Id.* at 182-83; *Erb* at 20. Other considerations include whether the retirement benefit has vested or matured and whether there are other assets available to offset the non-employee spouse's proportionate share. *Hoyt* at 182-83.

{¶ 41} Here, it appears from the divorce decree that the trial court treated Marjorie's pension as separate property. However, it is undisputed that some portion of Marjorie's retirement benefit accrued during the marriage and thus constitutes marital property. The trial court erred when it failed to classify it as such and determine Dwayne's proportionate share before ordering its disposition. Accordingly, we sustain Dwayne's third assignment of error.

### E. Fourth Assignment of Error

{¶ 42} In his final assignment of error, Dwayne asserts the trial court failed to make any of the required findings of fact and conclusions of law as required by R.C. 3105.171(G) or demonstrate it considered the factors in R.C. 3105.171(F) when dividing the marital property. *See Mantle* at ¶ 18. As expressed in the foregoing analysis, we agree. "In allocating property between divorcing parties, a trial court must indicate the basis for its award in sufficient detail to enable an appellate court to determine whether the award is fair, equitable, and in accordance with the law." *Kowalkowski-Tippett v. Tippett*, 10th Dist. No. 20AP-228, 2021-Ohio-4220, ¶ 51. If a trial court has insufficient evidence to make the required valuations, the correct course of action in most circumstances is to order the parties to produce additional evidence, not proceed to divide the parties' major assets without sufficient understanding of their value. *See, e.g., Raymond*, 2011-Ohio-6173 at ¶ 24 ("[A] party's failure to put on any evidence of value does not permit the court to assign an unknown as the value of a marital asset.").

{¶ 43} In addition to the trial court's repeated acknowledgments that it had insufficient evidence to value certain assets, the court also failed to justify its division of property with written findings. *See  Franklin* at ¶ 4; *Hamad v. Hamad*, 10th Dist. No. 06AP-516, 2007-Ohio-2239, ¶ 79 ("The objective of the findings of fact authorized by R.C. 3105.171(G) is to facilitate meaningful appellate review."). Absent this necessary analysis, we cannot conclude the trial court considered the statutory factors enumerated in R.C. 3105.171(F). More generally, it prevents us from determining whether the trial court made an equitable division of the marital property. As such, we sustain Dwayne's fourth assignment.

## IV. Disposition

{¶ 44} Having sustained Dwayne's four assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand the matter with instructions to the trial court to make the appropriate findings of fact and conclusions of law, consistent with this decision.

*Judgment reversed*;
*cause remanded with instructions.*

MENTEL, P.J. and BEATTY BLUNT, J., concur.

———————————