[Cite as *Dimitrievska v. Dimitrievski*, 2025-Ohio-1937.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Biljana Dimitrievska,                    :

      Plaintiff-Appellee/          :
      Cross-Appellant,                                No. 24AP-70
                                         :        (C.P.C. No. 20DR-3021)
v.                                       :
                                         :        (ACCELERATED CALENDAR)
Ante Dimitrievski,                       :

      Defendant-Appellant/         :
      Cross-Appellee.              :

---

D E C I S I O N

Rendered on May 29, 2025

---

**On brief:** *Trolinger Law Offices LLC*, and *Christopher L. Trolinger*, for appellee/cross-appellant. **Argued:** *Christopher L. Trolinger*.

**On brief:** *Don Roberts Law Offices*, and *Donald W. Roberts*, for appellant/cross-appellee. **Argued:** *Donald W. Roberts*.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

DORRIAN, J.

{¶ 1} Defendant-appellant/cross-appellee, Ante Dimitrievski, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, granting a divorce and terminating his marriage to plaintiff-appellee/cross-appellant, Biljana Dimitrievska.[1] Biljana has filed a cross-appeal. For the reasons that follow, we affirm in part and reverse in part.

---

[1] Given the similarity of the parties' surname and to avoid confusion, we refer to the parties by their first names.

## I. Facts and Procedural History

{¶ 2}   The parties were married on December 31, 2001, in the country of Macedonia.  Together they had one child, born October 6, 2014.  On September 3, 2020, Biljana filed a complaint for divorce, alleging the parties were incompatible and that Ante was guilty of gross neglect of duty.

{¶ 3}   On October 5, 2020, Ante filed an answer and counterclaim for divorce, alleging the parties were incompatible, and that Biljana was guilty of gross neglect of duty and extreme cruelty.

{¶ 4}   The court initially held a contested trial on January 17, 2023.  Biljana attended with counsel.  Ante, who was not represented by counsel at the time, failed to appear for the hearing.  He had sent an ex parte communication to the court on the morning the trial was scheduled to begin, claiming he was in the emergency room and informally requesting a continuance.  Biljana's counsel opposed the request, citing a history of "antics" from Ante.  (Jan. 17, 2023 Tr. Vol. 1 at 8.)  The court stated it was "very well aware of the defendant's antics and stall tactics and abuse of the system," but ordered a one-day continuance to allow Ante to provide verification of his medical emergency.  (Tr. Vol. 1 at 10-12.)

{¶ 5}   On January 18, 2023, Ante again failed to attend the court proceeding. Biljana attended with counsel.  The court stated it had received a "generic letter" from the emergency department at Mount Carmel East Hospital, not signed by a doctor, which stated that Ante was treated at the emergency department on January 17, 2023 and could return to work on January 19, 2023.  (Jan. 18, 2023 Tr. Vol. 2 at 21-22.)  After reviewing the factors articulated in *State v. Unger*, 67 Ohio St.2d 65 (1981), the court declined to grant another continuance and proceeded with a full evidentiary hearing.

{¶ 6}   At the January 18, 2023 hearing, the guardian ad litem recommended the trial court order an immediate "blackout period," during which time Biljana would be the temporary legal custodian of the parties' child based on concerns that Ante was acting to alienate the child from Biljana.  (Tr. Vol. 2 at 33.)  That same day, the trial court entered an interim entry initiating a "no contact 'blackout' period for father and minor child," and designating Biljana as the temporary legal custodian until further order of the court.

{¶ 7}   On March 29, 2023, Ante filed a motion to re-open the record of divorce proceedings, arguing that he should be allowed time to present his testimony and evidence

and to cross-examine the other witnesses who testified at the hearing on January 18, 2023. After a hearing, the trial court granted Ante's motion to re-open the record in part, allowing Ante to testify under direct and cross-examination, limited to presenting no witnesses other than himself, and limited to presenting evidence that was already provided to Biljana in discovery. The court also limited the permissible cross-examination of Biljana to the scope of her direct examination on January 18.

{¶ 8} The additional contested trial dates were held September 5 and 6, 2023. Both parties attended each day with their respective counsel.

{¶ 9} On December 28, 2023, the trial court issued the judgment entry and decree of divorce. The decree identified the duration of the marriage as December 31, 2001 to August 25, 2020, granted the parties a divorce on grounds of incompatibility and having lived separate and apart for more than one year, and divided the parties' assets and liabilities. The decree also allocated the parental rights and responsibilities regarding the minor child, including orders regarding the parties' parenting time, shared expenses related to the child, and other related obligations. Although not relevant to this appeal, the decree also established that Ante's child support obligation was $0 and that neither party would pay spousal support to the other.

## II. Assignments of Error

{¶ 10} As an initial matter, we note that Ante's brief fails to comply with App.R. 16(A)(3) and 16(A)(7). Under App.R. 12(A)(2), we are permitted to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *See also* App.R. 12(A)(1)(b) (requiring appellate court to "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16").

{¶ 11} App.R. 16(A)(3) requires an appellant's brief to include a "statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." App.R. 16(A)(7) requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶ 12} Rather than asserting assignments of error, Ante's brief provides a singular response to each of Biljana's assignments of error on cross-appeal which states: "Trial Court's refusal to entertain a full hearing of the evidence as opposed to the procedurally defective limitations to evidence, testimony and even representation of counsel does in fact, support affirming Plaintiff/Appellee/Cross Appellant's Assignment of Error." (Emphasis omitted.) (Ante's Brief at 3-7.) Ante's brief includes only a short summary argument which begins with a reference to the "Trial Court's adoption of the Magistrate's Decision, filed on August 12, 2015," which is not a document relevant to this case. (Ante's Brief at 14.) Given Ante's failure to assert his own assignments of error or argument in compliance with our rules, and given his apparent support of the assignments of error on cross-appeal, we will limit our review to the eight assignments of error on cross-appeal.[2]

{¶ 13} On cross-appeal, Biljana assigns the following assignments of error:

> [I.] The trial court erred and abused i[t]s discretion by failing to value the marital property and failing to order the property sold and equally divided as the division as ordered was not equitable.

> [II.] The trial court erred and abused its discretion in failing to value and equally and equitably divide defendant's retirement and other assets as of the defacto [sic] termination date of marriage.

> [III.] The trial court erred and abused its discretion by failing to make any required findings of fact and conclusions of law regarding the equitability of the property division pursuant to R.C. 3105.171(G) or make findings that the factors in R.C. 3105.171(F) were considered.

> [IV.] The trial court erred and abused its discretion in ordering that the parties obtain an appraisal and split the equity equally without retaining jurisdiction over the issue.

> [V.] The trial court erred and abused its discretion in allowing the defendant to have 180 days to refinance without providing a requirement for defendant to pay the plaintiff her share of the equity in the residence prior to her providing a quit claim deed.

---

[2] We also note that Ante's counsel conceded at oral argument that Ante agreed with Biljana's assignments of error on cross-appeal.

[VI.] The trial court erred and abused its discretion in not ordering the marital residence sold immediately as the defendant had failed to provide any evidence of his ability to obtain a cash out refinance.

[VII.] The trial court erred and abused its discretion in ordering that defendant would become residential parent for school placement purposes if the plaintiff moved outside of the current school district despite the plaintiff having full custody.

[VIII.] The trial court erred and abused its discretion in ordering an equal time schedule despite the evidence before the court and without considering the factors contained in R.C. 3109.051 such was against the manifest weight of the evidence.

## III. Discussion

{¶ 14} In her first cross-appeal assignment of error, Biljana argues the trial court abused its discretion by ordering a division of property without ascertaining values of that property. Specifically, Biljana asserts the trial court did not determine the fair market value of the marital residence and did not provide a value of Ante's retirement accounts. Biljana contends that this court should remand the matter to the trial court for the trial court to either order the parties to provide values of marital property or order a sale of the marital property with an equitable division of assets and liabilities.

{¶ 15} "As a general rule, a trial court's failure to value the marital property constitutes an abuse of discretion." *Beagle v. Beagle*, 2008-Ohio-764, ¶ 41 (10th Dist.), citing *Hightower v. Hightower*, 2002-Ohio-5488, ¶ 22 (10th Dist.). " 'A party's failure to put on any evidence does not permit assigning an unknown as value. The court itself should instruct the parties to submit evidence on the matter.' " *Richardson v. Richardson*, 2002-Ohio-4390, ¶ 45 (10th Dist.), quoting *Willis v. Willis*, 19 Ohio App.3d 45, 48 (11th Dist. 1984).

{¶ 16} Regarding the marital residence, the trial court found in the decree, "Neither party presented sufficient evidence to establish the equity value of the marital residence and/or its fair market value." (Dec. 28, 2023 Divorce Decree at 15.) The trial court also stated that there was insufficient evidence from the parties regarding the current amount owed on the mortgage on the property.

{¶ 17} In *Jackson v. Jackson*, 2024-Ohio-1755, ¶ 30-31 (10th Dist.), the trial court ordered a division of property without being able to include in the decree the fair market value of the marital residential property due to lack of evidence from the parties. We recognized that " 'courts, including this court, have found some limitations to the general declaration that a trial court must value all marital property.' " *Id.* at ¶ 32, quoting *Roberts v. Roberts*, 2008-Ohio-6121, ¶ 19 (10th Dist.). But, we noted, those are rare instances that do not involve the valuation of "major assets" like residential property. *Id.* "Regardless of what evidence the parties provide, a trial court must assign an appropriate value to the major marital assets as part of its duties under R.C. 3105.171(G)." *Id.*, citing *Franklin v. Franklin*, 2012-Ohio-1814, ¶ 5 (10th Dist.).

{¶ 18} Based on the foregoing, we find the trial court's failure to include in the divorce decree an assigned value of the marital residence was an abuse of discretion. Accordingly, the first cross-appeal assignment of error is sustained.

{¶ 19} To the extent this assignment of error also raises an issue with the absence of a value of Ante's retirement accounts in the divorce decree, we discuss that in connection with the second cross-appeal assignment of error.

{¶ 20} In her second cross-appeal assignment of error, Biljana asserts that the trial court abused its discretion by ordering that Ante retain the full amount of his retirement account when he failed to meet his burden to provide any evidence that it was separate property. As noted above, Biljana also argues in her first assignment of error that the trial court abused its discretion by failing to state a value of the retirement accounts in the decree.

{¶ 21} Under R.C. 3105.171(A)(3)(a)(i), marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." *See also Johnson v. Johnson*, 2021-Ohio-16, ¶ 55 (2d Dist.). "Generally, the party seeking to have property declared separate has the burden of proof by a preponderance of the evidence." *Beagle*, 2008-Ohio-764, at ¶ 23 (10th Dist.). A trial court's determination of whether property is marital or separate is reviewed under a manifest weight of the evidence standard and will be upheld if there was competent, credible evidence to support the trial court's findings. *Id. See also Roush v. Roush*, 2017-

Ohio-840, ¶ 18 (10th Dist.), citing *Banchefsky v. Banchefsky*, 2010-Ohio-4267, ¶ 36 (10th Dist.).

{¶ 22} Here, the trial court found that Ante maintains two 401(k) retirement accounts, each from a prior employer, Yachiyo and T.S. Tech. The decree did not state a value for either account nor did it state whether the accounts were separate or marital property. In its division of assets and liabilities in the decree, however, the trial court ordered that "Defendant shall retain any and all retirement accounts currently titled in his individual name, free and clear of any and all claims by the Plaintiff." (Divorce Decree at 39.)

{¶ 23} Evidence in the record demonstrates that Ante was employed at Yachiyo during the term of the marriage. There does not appear to be evidence regarding the dates of Ante's employment at T.S. Tech, but Biljana testified that the T.S. Tech 401(k) account was discovered as a result of a subpoena and had a balance of $55,901.95 as of September 30, 2020. Ante did not submit evidence to prove the accounts should otherwise be considered separate property. Therefore, there does not appear to be competent, credible evidence in the record that these retirement accounts would fall under the definition of separate property.

{¶ 24} We note that Biljana ultimately testified that she and Ante should each keep their own retirement accounts should the trial court agree to award her an amount, approximately $107,000, that she requested as an equitable distribution of marital property assets.[3] In exercising its broad discretion to determine an equitable property distribution, a court may consider the distribution suggested by the parties. *See James v. James*, 101 Ohio App.3d 668, 687 (2d. Dist. 1995). But the court is not bound by the parties' suggestions and must fashion an award that is a permissible exercise of that discretion. *Id.*

---

[3] During Biljana's testimony at the hearing on January 18, 2023, her attorney asked about a retirement account in Biljana's name, as well as the two retirement accounts in Ante's name, then proceeded as follows:

> Q: All right. Are you in agreement that each of you keep your own retirement accounts free and clear from any claim of the other?
>
> A: Yes.
>
> Q: The reason for that is because the [$]107,000 from the real estate covers any and all equitable distribution related to those accounts.
>
> A: Yes.

(Tr. Vol. 2 at 68.)

**{¶ 25}** It is not clear from the decree whether the trial court decided to award Ante his own retirement accounts as a result of a conclusion that they were separate property, or as a result of concluding they were part of the court's equitable division of marital property. Because the evidence in the record does not support a finding that Ante's retirement accounts are separate property, and because the trial court's failure to include a value of the retirement accounts to allow for meaningful appellate review of its equitable division of property, the second cross-appeal assignment of error is sustained.

**{¶ 26}** In her third cross-appeal assignment of error, Biljana argues the trial court abused its discretion by failing to make the required findings of fact and conclusions of law regarding the equitability of the property division pursuant to R.C. 3105.171(G). Additionally, she argues the trial court failed to articulate or reference that it considered the factors in R.C. 3105.171(F).

**{¶ 27}** R.C. 3105.171(B) states that "the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(C)(1) states, generally, that "the division of marital property shall be equal." However, the statute explains, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." The statute further states that "the court shall consider all relevant factors, including those set forth in division (F) of this section," when dividing marital property.

**{¶ 28}** R.C. 3105.171(G) states that "the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of 'during the marriage' " in any order dividing property or making a distributive award. The factors a court must consider in determining a marital property division or a distributive award are set forth in R.C. 3105.171(F).[4]

---

[4] R.C. 3105.171(F) states that the court shall consider all of the following factors in making a division of marital property and determining whether to make a distributive award:

        (1) The duration of the marriage;

        (2) The assets and liabilities of the spouses;

        (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

{¶ 29} "An exhaustive itemization by the trial court of every factor set forth in R.C. 3105.171(F) is unnecessary; however, the court's decision must clearly indicate that the factors were considered before the property division was made." *Beagle*, 2008-Ohio-764, at ¶ 40 (10th Dist.), citing *Hightower*, 2002-Ohio-5488, at ¶ 21 (10th Dist.). "In allocating property between the parties to a divorce . . . , the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 97 (1988).

{¶ 30} Regarding the division of major marital property assets, the decree in this case stated that "Plaintiff and Defendant shall equally (50-50) divide all equity in the marital residence." (Divorce Decree at 37.) The decree also allowed each of the parties to retain their retirement accounts of an unknown value, and to equally split the unknown value of the jointly held bank accounts.

{¶ 31} Although a 50-50 split of the major marital property assets could, arguably, be considered "equal," equal does not necessarily mean equitable. R.C. 3105.171(C)(1) provides that, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." Based on the testimony and evidence, or lack thereof, in this case, it is not clear what the court considered regarding the parties' assets and liabilities to determine that its ordered division was equitable.

---

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 32} A consideration of the assets and liabilities of the spouses is one of the factors in R.C. 3105.171(F) that a court is to consider when making a division of marital property. As discussed above, the trial court failed to include in the decree a value for the marital residence. Instead, the decree stated, "The equity in the marital residence subject to equitable division shall be determined by taking the appraised fair market value of the home less the outstanding mortgage balance as of January 1, 2023." (Divorce Decree at 37.) But there is no value of the marital residence in the record or in the decree. And the trial court found there was insufficient evidence presented as to the current amount of the mortgage owed. Rather than assign a value, the decree ordered the parties to "work together to have the marital residence appraised" within 30 days after the date of the decree with the appraisal costs to be divided equally. (Divorce Decree at 37.)

{¶ 33} Regarding the liabilities of the spouses, we recognize that the trial court did include in the decree an order that Ante pay an outstanding attorney fees award in the amount of $15,000 that he owed Biljana as a result of a December 2022 court order, addressing this separate and apart from the property division provisions in the decree. We also recognize that the trial court found Biljana "failed to convincingly prove" that Ante had possession of some personal items and cash that belonged to her. (Divorce Decree at 16.) But the court did not address in the decree whether it had considered an alleged transfer of marital assets from Ante to his mother from a joint account after Biljana filed her complaint for divorce. And, although the trial court found that Ante did not provide verifying evidence to support his claims that he used premarital funds to pay for the down payment and improvements for the marital residence, it provided no explanation of whether it considered Ante's coverage of the mortgage payments on the marital residence since the parties' separation as part of its division of property.

{¶ 34} The decree is similarly silent regarding other factors under R.C. 3105.171(F). For example, R.C. 3105.171(F)(3) states that the trial court should consider "[t]he desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage." Despite designating Biljana as the sole legal custodian and residential parent, the trial court did not award the marital residence to Biljana. Instead, it awarded Ante the marital residence and ordered that Ante become the residential parent if Biljana moved from the school district. The trial court did order that the child reside with both parents on an

alternating weekly basis. Whether that was a consideration informing the court's decision to award Ante the marital residence is not discernable from the decree itself.

{¶ 35} Given the foregoing evidence, we do not find that the trial court adequately considered the factors set forth in R.C. 3105.171(F) nor do we find that the court made the required written findings of fact to support its determination that the marital property was equitably divided as required by R.C. 3105.171(G). *See, e.g.*, *Jackson*, 2024-Ohio-1755, at ¶ 31 (10th Dist.) (noting the trial court's failure to state a value for the parties' marital residence and commercial property due to a lack of evidence coupled with no explanation for the division left the parties with a potential disparity in the distribution of assets without a stated justification). Accordingly, we sustain the third cross-appeal assignment of error.

{¶ 36} Biljana asserts in her fourth cross-appeal assignment of error the trial court abused its discretion by failing to retain jurisdiction over the marital residence without making a judicial finding of its value. In the fifth cross-appeal assignment of error, Biljana asserts the trial court abused its discretion by requiring her to provide a quit-claim deed on the marital residence to facilitate the ordered refinancing prior to or without a timeline by which Ante would pay her equity share.

{¶ 37} R.C. 3105.171(I) states that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses." Although a trial court lacks jurisdiction to modify a property division ordered, " 'it has the power to clarify and construe its original property division so as to effectuate its judgment.' " *Green v. Green*, 2006-Ohio-2534, ¶ 25 (10th Dist.), quoting *Gordon v. Gordon*, 144 Ohio App.3d 21, 24 (8th Dist. 2001). In other words, a trial court maintains jurisdiction to enforce its order even without an express reservation of jurisdiction.

{¶ 38} With respect to the quit-claim deed, the decree states as follows:

> Plaintiff shall execute and make available to Defendant (and/or the appropriate financial institution, lender, title company, or other appropriate entity) a Quit-Claim deed within a reasonable time prior to the financing closing in order to facilitate the financing closing, transferring to Defendant all of her right, title, and interest in the property. Defendant, or his agent, shall cause said Quit-Claim to be prepared and present to Plaintiff for execution.

(Divorce Decree at 37.)

{¶ 39} This language in the decree expressly provides that the purpose of the quit-claim deed is "to facilitate the financing closing" for the purposes of the refinancing of the marital residence by the deadline stated in the decree. (Divorce Decree at 37.)

{¶ 40} To the extent Biljana's argument in this assignment of error is that the trial court should have ordered an appraisal of the marital residence prior to issuing the final decree, we have already concluded it was an abuse of discretion for the trial court to omit from the decree the value of the marital residence. But we do not find that the trial court abused its discretion by failing to include in the decree an express reservation of jurisdiction over the appraisal process or an express deadline by which Ante must pay the equity obligation from the proceeds of the refinance of the marital residence (or sale, if one becomes necessary pursuant to the terms of the decree). Should either party fail to comply with their obligations under the divorce decree, he or she could be subject to contempt proceedings and any associated judicial sanctions if contempt were found to be warranted, including being subject to an attorney-fees award or an order to serve a term of incarceration. *See generally Rife v. Rife*, 2012-Ohio-949 (10th Dist.).

{¶ 41} Based on the foregoing, the fourth and fifth cross-appeal assignments of error are overruled.

{¶ 42} In the sixth cross-appeal assignment of error, Biljana argues that the trial court abused its discretion by allowing Ante to live in the marital residence for 180 days prior to the refinance deadline because Ante failed to provide any proof that he had the financial ability to obtain refinancing.

{¶ 43} "A trial court's order for the parties to refinance property within a set timeframe is within the trial court's discretion to divide the assets and liabilities of the parties." *Rigby v. Rigby*, 2021-Ohio-271, ¶ 10 (12th Dist.) Additionally, R.C. 3105.171(J)(1) provides that the court may issue an order that it determines to be equitable, including "[a]n order granting a spouse the right to use the marital dwelling or any other marital property or separate property for any reasonable period of time."

{¶ 44} We do not find it is outside the trial court's discretionary authority to provide a 180-day timeline for Ante to attempt the refinancing of the marital residence to obtain funds to pay Biljana her equity in the property. Likewise, it is not outside the trial court's discretionary authority to allow Ante to continue to reside in the marital property during

that time period. The question, however, is whether the trial court abused its discretion so ordering in the circumstances of this case.

{¶ 45} As discussed above, the trial court, in exercising its discretion to allocate the marital property, is subject to the requirement that it consider the factors set forth in R.C. 3105.171(F), and that it "make written findings of fact that support the determination that the marital property has been equitably divided," as required by R.C. 3105.171(G). Consistent with our conclusion regarding the third cross-appeal assignment of error, we also find the trial court failed to adequately consider the factors set forth in R.C. 3105.171(F) and failed to make the required written findings of fact to support its determination that allowing Ante time to refinance and reside in the marital residence was equitable.

{¶ 46} The record demonstrates that Ante was unemployed at the time of the hearing and had experienced an extended time off due to a workers' compensation injury. Ante also testified that he was supported by family and friends to cover his living expenses since his workers' compensation payments had ended in 2022. Additionally, although the decree designated Biljana as the sole legal custodian and residential parent, it did not award her the use of the marital residence. *See* R.C. 3105.171(F)(3). We cannot determine from the decree whether or how the trial court considered these or other factors, if at all, when it determined that Ante be allowed time to attempt to refinance the mortgage on the marital residence and have exclusive use of the residence during that time.

{¶ 47} Based on the foregoing, we find the trial court abused its discretion by failing to adequately consider the factors set forth in R.C. 3105.171(F) and failing to make the required written findings of fact under R.C. 3105.171(G) to support its determination that allowing Ante time to refinance and reside in the marital residence was equitable. Accordingly, we sustain Biljana's sixth cross-appeal assignment of error.

{¶ 48} In the seventh cross-appeal assignment of error, Biljana argues the trial court acted contrary to law by ordering that Ante be named the residential parent for school placement purposes if she moved out of the school district.

{¶ 49} In the decree, the trial court ordered that "Plaintiff [Biljana] shall be the sole legal custodian and residential parent of the minor child," and "[i]f Plaintiff moves from the Gahanna School District in which the minor child is currently enrolled, Defendant [Ante] shall become the residential parent for school placement purposes so long as he still remains in the Gahanna School District." (Divorce Decree at 39-40.)

{¶ 50} Where there is not a shared parenting plan, and the trial court instead allocates the parental rights and responsibilities, the parent who is designated as the residential parent and legal custodian of the child is the custodial parent. *Smith v. Smith*, 1999 Ohio App. LEXIS 6477, *6 (10th Dist. Dec. 28, 1999). "The custodial parent has legal and physical control of the minor child," and "may choose the school that the minor child attends." *Id.* at *7. "Because the law recognizes school placement as a custodial right, it cannot be divided." *Id.* at *8. In *Smith*, the court found that the trial court erred in naming one parent as the residential parent and legal custodian of the child while naming the other parent the "school placement parent." *Id.*[5]

{¶ 51} Pursuant to *Smith*, the trial court erred by designating Biljana as the sole residential parent and legal custodian but also designating Ante as the residential parent for school placement purposes should Biljana move out of the school district. Because the trial court impermissibly divided Biljana's custodial rights as the custodial parent, we sustain the seventh cross-appeal assignment of error.

{¶ 52} In the eighth cross-appeal assignment of error, Biljana argues that the trial court abused its discretion by ordering equal time between the parents despite evidence that Ante was alienating the child from Biljana and without considering the factors in R.C. 3109.051.

{¶ 53} R.C. 3109.051(D) lists 16 factors that a trial court shall consider when determining parenting time, including a visitation schedule. Additionally, R.C. 3109.051(F)(2) notes that each court of common pleas shall adopt standard parenting time guidelines by rule and "shall have discretion to deviate from its standard parenting time guidelines based upon factors set forth in division (D) of this section."

---

[5] In divorce proceedings involving shared parenting agreements, *see, e.g.,* R.C. 3109.04(A)(2), this court has recognized and upheld a custody arrangement in which a separate parent is designated for school placement purposes. *See, e.g., Keller v. Keller*, 2022-Ohio-4098 (10th Dist.). Here, however, the decree stated that, "[t]he parties could not reach an agreement regarding parental rights and responsibilities," and that "[n]either party made a formal filing or oral request for shared parenting." (Divorce Decree at 17, 22.) Therefore, we follow *Smith* because the allocation of parental rights and responsibilities was determined by the court under R.C. 3109.04(A)(1) and not by a shared parenting plan. *But see Crawford v. Fisher,* 2015-Ohio-114 (10th Dist.) (noting the father's argument that the trial court should have followed the guardian ad litem's recommendation that he be designated the school placement parent even though the trial court designated the mother as legal custodian and residential parent but finding that the trial court's decision was not against the manifest weight of the evidence and not addressing whether such an arrangement would have been contrary to law).

{¶ 54} In the decree, the trial court listed the R.C. 3109.051(D) factors that a court should consider in determining whether to grant parenting time along with its associated findings for each factor. Under several of the factors, the trial court referred to its findings, stated on earlier pages of the decree, made under comparable sections of R.C. 3109.04(F), the statute regarding factors a court should consider in determining the allocation of parental rights and responsibilities.

{¶ 55} As noted above, the trial court ordered that Biljana be designated the sole legal custodian and residential parent. The decree also ordered that the child "reside equally (50-50) with both parents on an alternating weekly basis," with the transition taking place every Sunday at 6:00 p.m. (Divorce Decree at 39.) The decree further ordered that the "non-possessory parent shall be entitled to a phone call or video telecommunication with the minor child at least every other day, for no less than fifteen (15) minutes," and that the parents have holiday and vacation time with the child pursuant to Franklin County Local Domestic Rule 27.1, Options 4 and 6. (Divorce Decree at 40.)

{¶ 56} The parenting time ordered in the decree is similar to that stated in Loc.R. 27, Option A, of the Court of Common Pleas of Franklin County, Division of Domestic Relations, although the decree does not expressly cite that rule. In that rule, as in the decree, the child shall reside equally with both parents on an alternating weekly basis, with the transition from one residence to another occurring each Sunday at 6:00 p.m. Unlike the decree here, however, Loc.R. 27, Option A, also provides that the parent who is not exercising weekly parenting time be entitled to spend one weekday evening with the child as detailed in that rule.

{¶ 57} This court has recognized that the factors in R.C. 3109.051 and 3109.04 are neither identical nor interchangeable. *Graham v. Harrison*, 2009-Ohio-4650, ¶ 40 (10th Dist.), citing *Flynn v. Flynn*, 2003-Ohio-990 (10th Dist.). This court has also stated that "where a trial court does deviate from the standard schedule without mention of the R.C. 3109.051 factors and an explanation for the deviation, the case must be remanded for the trial court to do so." *Graham* at ¶ 39. In *Graham*, this court found that "while the trial court thoroughly discussed the R.C. 3109.04 factors in determining whether shared parenting was in the child's best interest, it made no mention of the R.C. 3109.051 factors relating to parenting time, and it deviated from the Loc.R. 27 schedule without an explanation therefor." *Id.* at ¶ 40. As a result, we reversed the trial court's judgment with

respect to the parenting schedule and ordered that a new judgment include the required discussion of the factors set forth in R.C. 3109.051. *Id.* at ¶ 41.

{¶ 58} Here, the trial court's deviation from Loc.R. 27, Option A is a minor deviation, omitting only the weekday evening parenting time. And, although the trial court explained some of the R.C. 3109.051 factors by referring to its findings under comparable or overlapping R.C. 3109.04(F) factors also included in the decree, we cannot find that the court altogether ignored or omitted a consideration of the R.C. 3109.051 parenting time factors. Thus, this case is distinguishable from *Graham*.

{¶ 59} Biljana specifically argues that the guardian ad litem's concerns about Ante's attempts to alienate their child from her were not considered by the trial court. But the decree reflects that the trial court did consider the guardian ad litem's concerns, noting in the discussion of the R.C. 3109.04(F) factors that "[t]estimony from GAL and Plaintiff displayed significant concerns for parental alienation due to Defendant's actions," and "[t]his Court went so far to order a blackout period for Defendant and minor child to try and correct the concerns of parental alienation." (Divorce Decree at 22.) These findings were referenced again in the court's listing of the R.C. 3109.051 factors.

{¶ 60} We also note that the decree included mention of the guardian ad litem's recommendation that Ante have parenting time pursuant to Loc.R. 27, Option D (alternating weekends with the non-custodial parent having one weekday evening per week from 5:00 p.m. to 8:00 p.m.). But "the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation." *Lumley v. Lumley*, 2009-Ohio-6992, ¶ 46 (10th Dist.), citing *Galloway v. Khan*, 2006-Ohio-6637, ¶ 70 (10th Dist.). Biljana's argument invites this court to give a different weight to the guardian ad litem's recommendation than what the trial court did which we decline to do on appellate review under an abuse of discretion standard.

{¶ 61} For the foregoing reasons, we do not find the trial court abused its discretion in evaluating the factors under R.C. 3109.051 regarding parenting time. Accordingly, we overrule the eighth cross-appeal assignment of error.

## IV. Conclusion

{¶ 62} For the foregoing reasons, we overrule Biljana's fourth, fifth, and eighth cross-appeal assignments of error and sustain her first, second, third, sixth, and seventh cross-appeal assignments of error. The judgment of the Franklin County Court of Common

Pleas, Division of Domestic Relations and Juvenile Branch, is affirmed in part and reversed in part, and we remand the matter to that court to make the appropriate findings of fact and conclusions of law, consistent with this decision.  We leave to the trial court to determine whether it needs additional evidence from the parties to determine the necessary matters for review on remand.[6]

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

JAMISON, P.J., and EDELSTEIN, J., concur.

_____

---

[6] Ante asserted in his brief that the "most efficient disposition of this matter" would be a new "de novo" trial with a reassigned judge.  (Ante's Brief at 16.)  We find no basis to order a new trial or to assign a new judge in the circumstances of this appeal and Ante cites no authority supporting his position.